*In re* ESTATE OF GEORGE HERMAN NELSON, a Disabled Person (American National Bank and Trust Company, Guardian of the Estate of George Herman Nelson, Petitioner-Appellee, v. Robert Nelson, Guardian of the Person of George Herman Nelson, Respondent-Appellant).

First District (4th Division)   No. 1—92—1443

Opinion filed July 22, 1993.

Paul E. Peldyak, of Chicago (Robert Nelson, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (Leo G. Aubel, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

In 1956, George Herman Nelson (George) was declared incompetent to manage his estate and person. Petitioner, the American National Bank & Trust Company (Bank), was appointed the guardian of his estate, and respondent, Robert Nelson (Nelson), George's brother, was appointed the guardian of his person. Both guardians served in their respective capacities continuously until George's death on September 14, 1992.

As a military veteran, George received monthly benefits from the United States Department of Veterans Affairs (VA). After his adjudication, George's VA benefits were paid to the Bank as the guardian of his estate. In April 1991, a field examiner for the VA contacted the Bank regarding George's living conditions. Subsequently, the field examiner sent the Bank a copy of his field examination report which stated that George's living conditions were unacceptable, his personal hygiene was poor, and his clothing was worn. The report also noted that George was receiving $396 per month in social security benefits.

On August 8, 1991, the Bank filed a petition in the probate division of the circuit court of Cook County setting forth the findings of the VA field examiner and requesting the appointment of a guardian *ad litem* for the purpose of investigating George's living conditions,

making a report with respect thereto, and obtaining a detailed accounting from Nelson of all receipts and expenditures made on George's behalf for the period from March 1, 1989, through June 30, 1991. On August 8, 1991, the circuit court, acting upon the Bank's petition, appointed a guardian *ad litem* for the limited purposes set forth in the petition.

Pursuant to his appointment, the guardian *ad litem* interviewed George at his residence and inspected his living conditions. Additionally, he examined the current accounts of his estate and interviewed Nelson.

Based upon his investigation, the guardian *ad litem* filed a report with the court describing George's living conditions as dirty, disorganized, and littered. The report related that George was overweight, unshaven, unbathed, and dressed in worn clothing. The recommendations contained in the report suggested, *inter alia*, that George be removed from his apartment and placed in a structured environment, that more sums be paid from his estate for his care, and that Nelson remain as guardian of the person with the possibility of appointing a co-guardian.

Subsequently, the guardian *ad litem* filed a supplemental report outlining the scope of his continued investigations. That report related great efforts on the part of George's family to improve his living conditions. It was noted that on a visit to George's residence, the guardian *ad litem* found the apartment remodeled and painted and George appeared in better physical condition. Based upon the improvements in George's physical condition and surroundings, the guardian *ad litem* recommended that he be allowed to remain in his apartment and that Nelson continue as his guardian. With his supplemental report, the guardian *ad litem* filed a petition for fees and requested to be discharged.

Nelson objected to the fee petition arguing that fees should not be awarded because the court did not have the authority to appoint the guardian *ad litem* in the first instance or, alternatively, if fees were to be awarded that they be assessed against the Bank and not against the estate.

After a hearing on the fee petition, the circuit court approved the fees requested and continued the matter for a determination of who would be responsible for their payment. The court subsequently ordered that the fees of the guardian *ad litem* would be paid from the assets of the estate.

Nelson now appeals from the orders of the circuit court awarding fees to the guardian *ad litem* and ordering that those fees be paid

from George's estate. In urging reversal, Nelson argues that the circuit court did not have subject matter jurisdiction to appoint a guardian *ad litem* under the circumstances of this case. The Bank has responded to Nelson's jurisdictional objection to the orders of the circuit court and has moved to dismiss this appeal as untimely. For the reasons which follow, we affirm the orders of the circuit court.

Before addressing the issues raised by Nelson, we will consider the Bank's argument that this appeal is untimely and should be dismissed.

The Bank argues that the essence of this appeal is an attack upon the order of August 8, 1991, which appointed the guardian *ad litem*. Relying upon Supreme Court Rule 304(b)(1), which provides for the appeal of any "judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" (134 Ill. 2d R. 304(b)(1)), the Bank contends that the order appointing the guardian *ad litem* finally determined the right or status of a party. Because Nelson failed to appeal within 30 days of its entry, the Bank concludes that this court does not have jurisdiction to entertain the instant appeal. In support of its argument, the Bank relies on *In re Kerwood* (1976), 44 Ill. App. 3d 1040, 359 N.E.2d 183, where the court considered an appeal from an order appointing a guardian for three minors and giving him the right to consent to their adoption. However, the facts in *Kerwood* are readily distinguishable from this case and the Bank's reliance thereon is misplaced.

■ Not every order entered in an estate proceeding must be immediately appealed; only those orders that finally determine the right or status of a party may be appealed under Rule 304(b)(1). (*In re Estate of Devey* (1993), 239 Ill. App. 3d 630, 607 N.E.2d 685.) An order does not finally determine the right or status of a party when it contemplates future action. *Kelleher v. Hood* (1992), 238 Ill. App. 3d 842, 605 N.E.2d 1018.

In this case, unlike *Kerwood*, the guardian was appointed for the limited purpose of investigating George's living conditions and was required to submit a report. The order appointing the guardian *ad litem* did not finally determine the right or status of any party and contemplated future action. As a result, the order was not appealable under Rule 304(b)(1) and Nelson's failure to appeal from that order does not bar his attack on the order at this time.

For his part, Nelson argues that absent subject matter jurisdiction to appoint a guardian *ad litem* in the first instance, the circuit court lacked the requisite jurisdiction to award the fees of the guardian *ad*

*litem* to be paid from the estate. The premise of Nelson's argument is that because the court's jurisdiction over the person and property of a disabled adult is wholly statutory in origin, the powers of the court in exercising that jurisdiction are limited to those granted by statute. Nelson contends that because the Probate Act of 1975 only provides for the appointment of a guardian *ad litem* for a disabled adult upon the filing of a petition to adjudge the person disabled, to defend the interests of the disabled person in a legal proceeding, or upon the filing of a petition to terminate the adjudication of disability, revoke letters of guardianship, or modify the duties of a guardian (Ill. Rev. Stat. 1991, ch. 110½, pars. 11a—10(a), 11a—18(c), 11a—20(b)), the court here lacked the statutory power (jurisdiction) to appoint a guardian *ad litem* for a purpose other than that which is authorized by statute. Nelson concludes that absent the power (jurisdiction) to appoint the guardian *ad litem* in the first instance, the court also lacked the power to award the guardian *ad litem*'s fees to be paid from the assets of the estate.

■ Subject matter jurisdiction is the power of the court to hear the type of case that is before it (*In re Estate of Zoglauer* (1992), 229 Ill. App. 3d 394, 593 N.E.2d 93), and the power to grant the particular relief requested (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 461 N.E.2d 505). As Nelson correctly argues, the court's jurisdiction over the persons and property of disabled adults is wholly a creature of statute. At common law, control over a disabled adult's person and property was vested in the sovereign as *parens patriae*, a power to which the State succeeded. (*In re Estate of Piech* (1969), 117 Ill. App. 2d 403, 254 N.E.2d 565; *In re Guardianship of Smythe* (1965), 65 Ill. App. 2d 431, 213 N.E.2d 609.) By statute, the State's power in this regard is now exercised by the courts. Ill. Rev. Stat. 1991, ch. 110½, par. 11a—1 *et seq.*

■ Clearly, the court had subject matter jurisdiction to adjudicate George an incompetent (now a disabled person) and to appoint a guardian for his person; that power was granted to the court by statute. (Ill. Rev. Stat. 1955, ch. 3, par. 265(c) (now Ill. Rev. Stat. 1991, ch. 110½, par. 11a—3).) When he was adjudicated incompetent in 1956, George became a ward of the court entitled to its protection. (*Proehl v. Leadley* (1967), 86 Ill. App. 2d 472, 230 N.E.2d 516.) The jurisdiction of the court over its ward was not divested with the appointment of a guardian of his person. (*Hoit v. Snodgrass* (1925), 315 Ill. 548, 146 N.E. 562; see also *In re Estate of Peterson* (1982), 103 Ill. App. 3d 481, 431 N.E.2d 748.) The very nature of this type of pro-

ceeding requires the court to retain jurisdiction to supervise the guardians appointed for a ward. The jurisdiction of the court continues until the adjudication of the ward's disability is terminated or the ward dies. Guardians only act as the hand of the court and are at all times subject to its direction in the manner in which they provide for the care and support of the disabled person. (*Peterson*, 103 Ill. App. 3d at 485-86.) The very statute which outlines the duties of a guardian for the person of a disabled adult verifies this proposition by providing that the guardian is to act "[t]o the extent ordered by the court and under the direction of the court." (Ill. Rev. Stat. 1991, ch. 110½, par. 11a—17(a).) The court is under a duty to judicially interfere if the guardian is about to do anything that would cause harm or threaten harm to the ward. See *In re Estate of D.W.* (1985), 134 Ill. App. 3d 788, 481 N.E.2d 355.

■ As Nelson argues, article XXIII of the Probate Act of 1975 (Act) provides a comprehensive scheme for the removal of a guardian. (Ill. Rev. Stat. 1991, ch. 110½, par. 23—1 *et seq.*) The court is empowered by statute to remove a guardian even on its own motion but that power is not unrestricted. Removal may only be ordered for the reasons stated in section 23—2, and if removal is sought, the procedure to be followed is set forth in section 23—3. (Ill. Rev. Stat. 1991, ch. 110½, pars. 23—2, 23—3.) However, we find nothing in the Act which requires a court to commence a removal proceeding before it orders an investigation into the well-being of its ward.

When a court is presented with hearsay information indicating that its ward might be neglected, we think the prudent course is the one that was followed by the judge in this case: investigate first. If the information is verified, the court can then order the issuance of a citation directing the guardian to show cause why he should not be removed.

■ The real issue in this case surrounds the appointment of a guardian *ad litem* as the means by which the court undertook to investigate the information contained in the Bank's original petition. Nelson equates the provisions of the Probate Act of 1975, which authorizes the appointment of a guardian *ad litem* in three specific circumstances, with a limitation upon the court's power to appoint a guardian *ad litem*. We disagree. We find no language in the Act that evinces any intention on the part of the legislature to make the appointment provisions cited by Nelson exclusive. (See *In re Estate of Barth* (1989), 181 Ill. App. 3d 279, 536 N.E.2d 973.) When, as in this case, a court is charged with a duty to protect the interests of its ward, we believe that by implication it has such powers, although not

expressly given by the statute vesting the court with jurisdiction over the ward, as are necessary to properly discharge that duty, including the appointment of a guardian *ad litem* to investigate unverified charges of neglect.

Having found that the court had the power to appoint a guardian *ad litem*, it follows that it also had the power to award the fees for his services. Section 27—4 of the Probate Act of 1975 provides that a guardian *ad litem* is entitled to reasonable compensation as fixed by the court to be paid in the due course of administration. (Ill. Rev. Stat. 1991, ch. 110½, par. 27—4.) We find no error in the order awarding fees to the guardian *ad litem* in this case or in the order directing that those fees be paid from the assets of the estate.

Affirmed.

JOHNSON and CAHILL, JJ., concur.