NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

          Nos. 80182, 80184, 80246 cons.--Agenda 21--May 1996.

      In re ESTATE OF JOHN F. WELLMAN (Samuel H. Young, Appellant;

                      Patrick T. Murphy, Appellee).

                     Opinion filed October 18, 1996.

     JUSTICE FREEMAN delivered the opinion of the court:

     These consolidated appeals arise out of a series of events

during the last years in the life of John Wellman. He executed a

durable power of attorney, in which he appointed his attorney,

Samuel Young, as his agent. Wellman also established joint

tenancies with Young in several accounts. The circuit court of Cook

County: adjudicated Wellman mentally disabled and appointed Patrick

Murphy, the public guardian of Cook County, as Wellman's plenary

guardian; restored Wellman to competency and discharged Murphy; and

granted Murphy leave to appeal as Wellman's plenary guardian.

Wellman died. Lastly, the trial court granted the fee petition of

Wellman's guardian ad litem.

     In an unpublished order (Nos. 1--90--3008, 1--90--3011, 1--91-

-2055, 1--92--1983 cons. (unpublished order under Supreme Court

Rule 23)), the appellate court: held that Murphy had standing to

appeal, severed the joint tenancies, upheld the fee award to

Wellman's guardian ad litem, and held that Wellman's death rendered

moot the parties' remaining issues on appeal. We allowed leave to

appeal (155 Ill. 2d R. 315(a)). We now reverse the appellate

court's severance of the Wellman-Young joint tenancies, and affirm

the appellate court's upholding of the guardian ad litem's fee

award and dismissal of the remaining issues.

                                BACKGROUND

     The record contains the following facts that are pertinent to

our disposition of the issues raised on appeal. John Wellman was

born in 1900. A certified public accountant, he was a self-employed

businessman and stock trader during his lifetime. By early 1990, he

had accumulated assets totalling approximately $850,000, of which

$650,000 were invested in United States Treasury bills, savings and

checking accounts, and stock.

     Samuel Young was admitted to the Illinois bar in 1948. In

1986, Wellman first employed Young concerning the probate of an

estate. Wellman was the executor of the estate; he had been a joint

tenant with the testator in certain accounts. Wellman continued

using Young's services concerning, inter alia, tax preparation,

real estate matters, and the management of Wellman's property.

     In a letter to Young dated March 21, 1988, Wellman stated in

writing what he had previously told Young on "many occasions."

Wellman, having no family, asked for Young's assistance in handling

his financial affairs. Wellman also wanted Young to look after his

affairs if he should become incapacitated. On December 27, 1988,

Wellman executed a durable power of attorney in which he appointed

Young as his agent. See generally 755 ILCS 45/1--1 et seq. (West

1992). Wellman granted Young broad authority to act for him whether

competent or incompetent.

     On December 1, 1989, Wellman and Young exchanged two letters.

The first letter, from Wellman to Young, confirmed: Wellman's

previous request for Young to assist him in managing his property,

Young's agreement to provide such assistance, and, in consideration

thereof, Wellman's promise to place his property in joint tenancy

with Young with right of survivorship. Also, during Wellman's life,

all of the assets and income would be used for Wellman.

     The second letter, from Young to Wellman, acknowledged:

Wellman's decision to make Young his "partner" in managing his

property, Wellman's decision to place his property in joint tenancy

with Young to avoid probate, Young's agreement to look after

Wellman and to see that Wellman had medical and health care,

Young's agreement not to spend or use Wellman's property for any

purpose other than for Wellman's benefit, and Wellman's power to

revoke the joint tenancies at any time and to make gifts to others

at his death.

     On December 7, 1989, Wellman and Young visited the Northern

Trust Bank in Chicago. They spoke to Paul Larson, who had been

Wellman's personal banker since 1984. Wellman and Young instructed

Larson to place Wellman's savings and checking accounts in joint

tenancy. Larson refused. Eventually, Wellman and Young closed the

account, totalling $188,000, but returned when the bank agreed to

the Wellman-Young joint accounts.

     After visiting the Northern Trust Bank, Wellman and Young went

to the Federal Reserve Bank in Chicago. They spoke to Andrew

Vlahos, who had served Wellman since 1985. They discussed Wellman's

United States Treasury Direct Account and joint tenancy with Young.

On January 30, 1990, the account was placed in the name of Wellman

and Young in joint tenancy with right of survivorship.

     In December 1989, Vlahos contacted Assistant Illinois Attorney

General Ann Parisi. Vlahos told Parisi that Young possibly was

exploiting Wellman. On December 21, 1989, Parisi visited Wellman to

investigate whether any laws had been violated and whether Wellman

had been financially exploited in any way.

     On January 7, 1990, the Illinois Attorney General's office

referred the matter to the Cook County public guardian's office to

investigate whether Wellman needed a guardian. On March 30, 1990,

Murphy petitioned the trial court to be appointed plenary guardian

of Wellman's person and estate. On April 3, 1990, the trial court

appointed Sandra Thiel as Wellman's guardian ad litem. On May 8,

1990, at the close of a hearing, the trial court adjudicated

Wellman mentally disabled and appointed Murphy plenary guardian of

Wellman's person and estate. On May 24, 1990, the trial court,

granting Murphy's petition, entered an order freezing the Wellman-

Young joint accounts at the Northern Trust Bank.

     On June 13, 1990, Young petitioned the trial court to vacate

the appointment of the plenary guardian for Wellman. In a separate

filing, Young petitioned the court to vacate the order freezing the

bank accounts. On June 14, 1990, Wellman's attorney, Robert

Downing, petitioned the trial court to restore Wellman to

competency and discharge Murphy and Thiel, and to vacate the order

freezing the bank accounts. Also, on June 24, 1990, Downing moved

to vacate the May 8, 1990, guardianship order specifically because

it violated Wellman's due process rights and the durable power of

attorney.

     On July 13, 1990, Murphy moved to dismiss Young's petition to

vacate the appointment of a plenary guardian for Wellman. In a

separate filing, Murphy moved to dismiss Downing's petition to

restore Wellman. Murphy also filed answers to Young's and Downing's

petitions. On July 24, 1990, Murphy petitioned the trial court to:

(1) revoke the durable power of attorney in which Wellman appointed

Young as his agent, and (2) sever all of the joint tenancy

accounts.

     On September 12, 1990, Murphy moved for summary judgment on

Young's and Downing's petitions to vacate the guardianship order.

On September 19, Young cross-moved for summary judgment on his

petition.

     In orders entered on October 16 and 17, 1990, the trial court

granted Murphy's motion for summary judgment and denied Young's and

Downing's petitions on most issues. On October 19, 1990, Downing

(Docket No. 1--90--3008) and Young (Docket No. 1--90--3011) each

appealed from the trial court's denial of their respective

petitions.

     From January 7 through March 28, 1991, the trial court held

hearings on Murphy's July 24, 1990, petition to revoke the durable

power of attorney and sever the joint tenancies. On May 8 through

10, 1991, the court held hearings on Downing's June 14, 1990,

petition to restore Wellman.

     On June 3, 1991, the trial court entered a "final judgment

order" dismissing Murphy's petition and granting Downing's peti-

tion. The court terminated the adjudication of mental disability,

restoring Wellman to competency. The court also vacated its order

freezing the Northern Trust Bank accounts.

     On June 12, 1991, Murphy filed in the trial court a "Motion

for Leave to Appeal" to the appellate court. In the motion, Murphy

acknowledged that by terminating the adjudication of mental

disability, the trial court restored Wellman to competency and

discharged Murphy as his guardian. Murphy further stated:

               "3. That having been discharged as guardian of the

          estate and person of John F. Wellman, the Public Guardian

          has no standing to act on behalf of the estate in any

          respect including appeal of the June 3, 1991, final

          judgment order.

               4. That it would be a circumvention of the Illinois

          Supreme Court Rules and clearly against their spirit and

          intent to deny the estate any opportunity to appeal from

          this final judgment order.

               5. That there is no other party available to take an

          appeal of such order other than the Public Guardian of

          Cook County.

               6. That the Public Guardian will not seek any fees

          from the estate of John F. Wellman for any work on the

          appeal.

               WHEREFORE, the Public Guardian of Cook County

          respectfully requests leave of this court to prosecute an

          appeal, on behalf of the estate of John F. Wellman, of

          this court's final judgment order entered on June 3,

          1991."

The trial court entered an order stating in pertinent part that

Murphy, as Wellman's plenary guardian of Wellman's estate, was

granted leave to appeal from the final judgment order "on behalf of

the estate."

     On June 28, 1991, Murphy filed his notice of appeal in the

appellate court (Docket No. 1--91--2055). Murphy asked the appel-

late court to reverse the trial court's final judgment order and

empower the guardian to revoke the agency agreement between Wellman

and Young, reverse the trial court's restoration of Wellman, hold

that the Young-Wellman joint tenancies are null and void, and order

all accounts to revert back to the sole ownership of Wellman.

     On July 3, 1991, Murphy filed in the trial court a first and

final account of Wellman's estate. Murphy distributed to Young

$955.23, which was the balance of the cash receipts and disburse-

ments that Murphy handled during the guardianship. The trial court

approved the final account, formally discharged Murphy as plenary

guardian of the person and estate of Wellman, and closed the

estate.

     On August 17, 1991, Wellman died. Around August 28, Young

formally reported Wellman's death to the trial and appellate

courts, Downing, and Murphy. On October 2, 1991, Wellman's will was

admitted to probate and Young was appointed executor.

     On January 30, 1992, Thiel, Wellman's guardian ad litem,

petitioned the trial court for a fee award of $4,843 to "be paid

from the funds" of Wellman. Young moved to dismiss. On April 15,

1992, the trial court denied Young's motion to dismiss and awarded

Thiel fees in the amount requested. Young appealed from the fee

award (Docket No. 1--92--1983).

     The appellate court consolidated the four separate appeals. On

February 17, 1993, the court heard oral argument and, on March 15,

1995, issued an unpublished order (134 Ill. 2d R. 23). The court

held that Wellman's death rendered moot most of the issues raised

on appeal. However, the appellate court held that Murphy's dis-

charge as Wellman's plenary guardian, or Wellman's subsequent

death, did not deprive Murphy of standing to appeal from the denial

of his petition to sever the joint tenancies. The appellate court

then reversed the trial court and severed the joint tenancies. The

court also upheld the fee award to Thiel. Young, Downing, and

Murphy all appeal.

                                DISCUSSION

     Before this court, Downing and Young continue their piecemeal

appellate litigation style. In cause No. 80182, Downing appeals

from the appellate court's severance of the joint tenancies. In

cause No. 80184, Young appeals from the trial court's initial

adjudication of Wellman as mentally disabled, and the appellate

court's severance of the joint tenancies. Murphy, responding in

these causes, cross-appeals from the trial court's restoration of

Wellman. In cause No. 80246, Young appeals from the appellate

court's judgment upholding the trial court's fee award to Thiel. We

consolidated these causes for review.

                Murphy's Standing to Appeal Joint Tenancies

     Young and Downing contend that the appellate court erred in

severing the Wellman-Young joint tenancies. Each initially argues

that Murphy lacked standing to appeal from the denial of his

petition to sever the joint tenancies.

     The doctrine of standing requires that a party, either in an

individual or representative capacity, have a real interest in the

action brought and in its outcome. The purpose of the doctrine is

to ensure that courts are deciding actual, specific controversies

and not abstract questions or moot issues. In re Marriage of

Rodriguez, 131 Ill. 2d 273, 279-80 (1989); see 59 Am. Jur. 2d

Parties §§30, 31 (1987). Standing "is not simply a procedural

technicality" (59 Am. Jur. 2d Parties §30, at 416 (1987)), but

rather is an aspect or a component of justiciability. In re Estate

of Burgeson, 125 Ill. 2d 477, 485 (1988); Weihl v. Dixon, 56 Ill.

App. 3d 251, 253 (1977).

     The essence of the inquiry regarding standing is whether the

litigant, either in an individual or representative capacity, is

entitled to have the court decide the merits of a dispute or a

particular issue. Helmig v. John F. Kennedy Community Consolidated

School District No. 129, 241 Ill. App. 3d 653, 658 (1993). This

court has repeatedly held that standing requires some injury in

fact to a legally recognized interest. Rodriguez, 131 Ill. 2d at

280 (and cases cited therein).

     We agree with Young and Downing that Murphy lacked standing to

appeal from the denial of his petition to sever the Wellman-Young

joint tenancies. We note that our conclusion is based on

established guardianship principles, and that Murphy, as a public

guardian, "has all the powers and duties of any other guardian

appointed under the Probate Act of 1975." Burgeson, 125 Ill. 2d at

486. The occurrence of two events deprived Murphy of standing.

First, the trial court restored Wellman to competency and dis-

charged Murphy. Second, Wellman died. 755 ILCS 5/24--12 (West

1992).

                           Wellman's Restoration

     Murphy himself acknowledged to the trial court in his motion

for leave to appeal that the court restored Wellman and discharged

Murphy. He also admitted that, as a result, he had "no standing to

act on behalf of the estate in any respect including appeal of the

June 3, 1991, final judgment order."

     However, the trial court granted Murphy leave to appeal "on

behalf of the estate." The appellate court held that Murphy had

standing to appeal, reasoning:

               "We first find that the Public Guardian had standing

          to appeal the denial of his petition to sever the joint

          tenancies. The Public Guardian had an interest in seeking

          that relief because the Public Guardian had been

          appointed plenary guardian of Wellman and because he

          believed that his ward was incapable of handling his own

          affairs. The discharge of the Public Guardian did not

          deprive the Public Guardian of the ability to appeal an

          adverse ruling."

     This reasoning was erroneous. Murphy correctly acknowledged

that Wellman's restoration deprived him of standing to appeal. The

Probate Act of 1975 does not provide for the automatic termination

of a guardianship for a disabled ward as in the case of a

guardianship for a minor ward who reaches the age of majority (see

755 ILCS 5/11--14.1 (West 1992)). Rather, the Act requires the

trial court to hold a hearing on the petition of the ward, someone

on the ward's behalf, or on the court's own motion, to revoke or

modify the guardianship. 755 ILCS 5/11a--20, 11a--21 (West 1992).

At the close of the hearing, the court may: "(1) dismiss the

petition; (2) terminate the adjudication of disability; (3) revoke

the letters of guardianship of the estate or person, or both; (4)

modify the duties of the guardian; and (5) make any other order

which the court deems appropriate and in the interests of the

ward." 755 ILCS 5/11a--21(c) (West 1992).

     In Hoff v. Meirink, 12 Ill. 2d 108, 111 (1957), this court

stated:

               "While it is clear that a restoration to competency

          does not ipso facto terminate the office of the

          conservator, it by no means follows that the probate

          court can continue to exercise its supervisory power over

          the property of the ward after the ward has been restored

          to competency and until the conservator's office

          terminates. Indeed, serious constitutional questions

          would be presented by a statute that provided for the

          exercise of supervisory power after the ward's disability

          had been removed. We find no such provision in the

          Probate Act."

The appellate court has correctly read Hoff as "authority for the

general proposition that a restored ward becomes reinvested with

the rights he lost when adjudicated an incompetent." In re Estate

of Hayden, 105 Ill. App. 3d 60, 65 (1982). Upon the restoration of

a mentally disabled ward, the ward has the right to be put in

possession of his or her property, and to ask the court to order

the guardian to deliver to the ward all of the ward's money and

property that the guardian has, or the money and property to which

the ward is entitled. In re Estate of Berger, 166 Ill. App. 3d

1045, 1055 (1987).

     Following the restoration of a ward, the now-competent former

ward is capable of representing, and has the right to represent,

his or her own interests. Thus, the guardian no longer has standing

to represent in court the interests of the former ward. Hayden, 105

Ill. App. 3d at 63-66.

     Further, we agree with long-established authority that upon a

ward's restoration, the guardian lacks standing to appeal

therefrom. In re Guardianship of Love, 19 Ohio St. 2d 111, 249

N.E.2d 794 (1969) (and cases cited therein); see, contra, Cobb v.

South Carolina National Bank, 210 S.C. 533, 43 S.E.2d 465 (1947).

Courts reason that the guardian lacks a legally sufficient interest

in the ward's restoration to allow the guardian to contest it on

appeal. The guardian " `is simply a trustee and can have no

interest in this regard adverse to the recovery of sanity by the

ward.' " Love, 19 Ohio St. 2d at 114-15, 249 N.E.2d at 796, quoting

Ensign v. Flaxon, 224 Mass. 145, 150, 112 N.E. 948, 950 (1916).

     This reasoning is quite settled in Illinois. The appointment

of a guardian creates the relation of trustee and beneficiary

between the guardian and the ward. The estate becomes a trust fund

for the ward's support. Lewis v. Hill, 387 Ill. 542, 545 (1944).

The guardian only acts as the hand of the court and is at all times

subject to the court's direction in the manner in which the

guardian provides for the care and support of the disabled person.

In re Estate of Nelson, 250 Ill. App. 3d 282, 287 (1993).

     Also, guardianship proceedings are not, strictly speaking,

adversarial. The trial court protects the disabled person as its

ward, vigilantly guarding the ward's property and viewing the ward

as a favored person in the eyes of the law. The court functions in

a central role, which permits it to oversee and control all aspects

of the management and protection of the disabled person's estate.

The court controls the ward's person and estate, and directs the

guardian's care, management, and investment of the estate. Berger,

166 Ill. App. 3d at 1055. The sole issue facing the trial court in

a restoration proceeding is the mental condition and the best

interests of the ward. See Love, 19 Ohio St. 2d at 114, 249 N.E.2d

at 795. Thus, based on the foregoing principles, and contrary to

the appellate court's reasoning, the trial court's restoration of

Wellman cannot be considered to be such an "adverse ruling" to

Murphy as to allow him to appeal therefrom.

     We note that Murphy characterizes the final judgment order as

only partially restoring Wellman. Thus, according to Murphy, his

relationship to Wellman should not have ended, providing him with

standing to appeal. Murphy points to the final judgment order, in

which the trial court found "that John F. Wellman [was] a partially

disabled person who lacks some but not all of the capacity as

specified in [755 ILCS 5/11a--3 (West 1992)] and, therefore, is

entitled to the appointment of a limited guardian of the person and

estate." The court also found that Wellman lacked the "capacity to

perform the tasks necessary for the routine care and safety of his

person or for the tasks incidental to the paying of bills, writing

checks, making purchases and managing his estate at that level of

performance."

     However, the trial court terminated the adjudication of mental

disability. In addition to the above-quoted finding, the court also

found that: the extent of Wellman's confusion or dementia varied

due to his anemia and blood transfusions, and that drug therapy had

helped with those conditions; Wellman had the mental ability to

communicate with his physician, to understand his mental and

physical conditions, and to make responsible decisions concerning

his health care; and that Wellman had the mental ability to make

and communicate responsible decisions concerning the control,

investment, and management of his financial affairs and the

disposition of his estate. The trial court also found that Wellman

understood the nature and consequences of placing his accounts in

joint tenancy with Young, had the requisite mental capacity to

enter into the transactions, and was capable of controlling or

revoking the agency relationship with Young.

     These findings show that the trial court found Wellman to be

a partially disabled person, but not yet in need of a guardian over

his estate. With help from others, i.e., Young, his agent, Wellman

was able to direct and manage his affairs and estate. See In re

Estate of Galvin, 112 Ill. App. 3d 677, 681 (1983), quoting In re

Estate of Mackey, 85 Ill. App. 3d 235, 238 (1980). Of course, the

question of Wellman's mental disability was a uniquely factual

question for the trial court, whose findings will not be disturbed

on review unless they are against the manifest weight of the

evidence. See Galvin, 112 Ill. App. 3d at 681-82.

     When the trial court restored Wellman on June 3, 1991, the

reason for the State's interference with his affairs ceased. See In

re Estate of Hire, 309 Ill. App. 566, 568 (1941), rev'd on other

grounds, 379 Ill. 201 (1942). The only function for Murphy to

perform was to account for Wellman's estate and deliver it to

Wellman. The existence or absence of Wellman's next of kin neither

diminished nor enlarged Murphy's role as guardian.

     On July 3, 1991, a few days after Murphy filed his notice of

appeal, he filed his account of Wellman's estate. The trial court

approved the account, formally discharged Murphy as plenary

guardian of Wellman's person and estate, and closed the estate.

Contrary to the trial court's grant of leave to appeal, Murphy

could not appeal "on behalf of the estate." After July 3, 1991,

Murphy's relationship to Wellman's money and property ceased to

exist. In terms of our definition of standing, after Wellman was

restored and Murphy was discharged, Murphy could no longer claim an

injury in fact to a legally recognized interest. See Burgeson, 125

Ill. 2d at 487.

                              Wellman's Death

     If Wellman's restoration and Murphy's discharge, standing

alone, did not deprive Murphy of standing to appeal, then they

certainly did when considered with Wellman's death. However, the

appellate court reasoned that "[a]s Wellman's property held in

joint tenancy remains, we hold that the issue whether the denial of

the petition to sever the joint tenancies was error is not moot."

     This reasoning was erroneous. Not only did Wellman's death

render moot the issue of whether the trial court erred in denying

Murphy's petition to sever the joint tenancies, but Wellman's death

also deprived Murphy of standing to assign the error.

     The general rule is that a guardianship necessarily terminates

by the death of the ward. 57 C.J.S. Mental Health §146, at 45,

§158, at 55 (1992); 39 Am. Jur. 2d Guardian & Ward §54 (1968).

Contrary to the appellate court's reasoning, although Wellman's

property remained after his death, at issue is Murphy's

relationship to that property. Murphy was the guardian of Wellman's

estate. That relationship ended at the latest on July 3, 1991, when

Murphy was formally discharged, or on August 17, 1991, when Wellman

died.

     Section 24--12 of the Probate Act of 1975 accords with the

general rule that a guardianship terminates with the death of the

ward, but subject to section 24--19. 755 ILCS 5/24--12 (West 1992).

Section 24--19(a) provides: "Without order of appointment and until

the issuance of letters testamentary or of administration OR UNTIL

SOONER DISCHARGED BY THE COURT, a representative of the estate of

a deceased ward has the powers and duties of an administrator to

collect." (Emphasis added.) 755 ILCS 5/24--19(a) (West 1992). In

the present case, Murphy was discharged prior to Wellman's death.

Accordingly, the general rule applies.

     The appellate court's order lacks any reference to this

court's decision in Burgeson, where the court applied this

reasoning against Murphy. This court held that "Murphy's duties as

Burgeson's guardian terminated upon her death." Burgeson, 125 Ill.

2d at 487. We further held that Murphy had a legally recognizable

interest that existed following Burgeson's death--an unpaid

creditor of the estate. However, that interest terminated once

Murphy's office received its fees in the final account of the

estate. Burgeson, 125 Ill. 2d at 487-88; 755 ILCS 5/18--10 (West

1992).

     Murphy unsuccessfully attempts to distinguish the present case

from Burgeson. Murphy first argues that in Burgeson the decedent's

estate was closed, while Wellman's estate is in probate and a will

contest is pending. Thus, "the decedent's estate in this case has

not been closed." However, Murphy's relationship to Wellman's

person and estate was closed on July 3, 1991, when Murphy was

formally discharged. Murphy also characterizes himself as an unpaid

creditor. However, he filed his final account of the estate, which

the trial court approved. Also, in his motion for leave to appeal,

Murphy stated to the trial court that he would not seek any fees

from Wellman's estate for work on the appeal. Burgeson controls the

outcome of this issue.

     Murphy raises serious allegations impugning the professional

conduct of Young. If Murphy suspects Young of unethical conduct,

then he, like anyone else, can complain to the Attorney Registra-

tion and Disciplinary Commission. See Burgeson, 125 Ill. 2d at 488.

However, we hold that Wellman's restoration and death deprived

Murphy of standing to appeal from the denial of his petition to

sever the Wellman-Young joint tenancies. Consequently, the

appellate court erred in severing the joint tenancies.

                          Guardian Ad Litem Fees

     "A guardian ad litem *** is entitled to such reasonable

compensation as may be fixed by the court to be taxed as costs in

the proceedings and paid in due course of administration." 755 ILCS

5/27--4 (West 1992). However, Young contends that the appellate

court erred in upholding the trial court's fee award to Thiel. We

note two surprising arguments of Young. He first argues that the

trial court lacked authority to award Thiel fees from the funds of

Wellman because she petitioned the court for fees "six months after

the Estate was closed and all assets of $955.23 distributed." Young

also argues that "[t]he size of this estate, $955.23, shows that an

award of $4,843.75 is excessive."

     These arguments completely lack merit. Of course, Wellman's

"estate," in the context of his adjudication of mental disability,

was not limited to the balance of the cash receipts and

disbursements that Murphy handled during the guardianship. Rather,

Wellman's "estate" during the time of his adjudication of

disability consisted generally of all of his real and personal

property (see Black's Law Dictionary 547 (6th ed. 1990), citing

Uniform Probate Code §1--201(11); accord In re Estate of Anderson,

195 Ill. App. 3d 644, 650 (1990)), which totalled in the hundreds

of thousands of dollars. Thiel was properly awarded fees from the

assets that she was appointed to protect. See People v. Pasfield,

284 Ill. 450, 458 (1918); Nelson, 250 Ill. App. 3d at 288.

     The questions of who must pay guardian ad litem fees and in

what amount rest within the discretion of the trial court. See In

re Estate of Dyniewicz, 271 Ill. App. 3d 616, 622-23 (1995);

Chicago Title & Trust Co. v. Czubak, 52 Ill. App. 3d 986, 989

(1977); Merneigh v. Merneigh, 2 Ill. App. 2d 352, 356 (1954). In

the present case, the trial court found that Thiel's hourly rate

and the number of hours that she billed were reasonable and

necessary. We cannot say that the trial court abused its discretion

in granting Thiel's fee petition.

                             Remaining Issues

     We also agree with the appellate court that Wellman's death

rendered moot the numerous remaining issues raised by the parties.

"A case can become moot when, pending the decision on appeal,

events occur which render it impossible for the reviewing court to

grant effectual relief to either party." Bluthardt v. Breslin, 74

Ill. 2d 246, 250 (1979). The existence of a real controversy is an

essential prerequisite to appellate jurisdiction. Where the issues

involved in the trial court no longer exist, an appellate court

will not review the cause merely to decide moot or abstract

questions, to determine costs, or to establish a precedent. When,

pending an appeal from a judgment of a lower court, an event occurs

that renders it impossible for a court of review to grant any

effectual relief, the court will dismiss the appeal. La Salle

National Bank v. City of Chicago, 3 Ill. 2d 375, 378-80 (1954);

Tuttle v. Gunderson, 341 Ill. 36, 45-46 (1930).

     In the present case, the appeals of Downing, Young, and Murphy

were pending in the appellate court when Wellman died on August 17,

1991. Downing contended, inter alia, that the adjudication of

Wellman as mentally disabled violated Wellman's due process rights.

Young also contended, inter alia, that the adjudication of mental

disability was void for several reasons. Murphy contended, inter

alia, that Wellman's restoration was against the manifest weight of

the evidence.

     Wellman was the person who was allegedly improperly adjudi-

cated mentally disabled, and was the person who was allegedly

improperly restored. These issues obviously became moot with

Wellman's death.

     For the foregoing reasons, the judgment of the appellate court

in cause Nos. 80182 and 80184 is reversed insofar as it severed the

Wellman-Young joint tenancies, and affirmed insofar as it dismissed

the remaining issues; the judgment of the appellate court in cause

No. 80246 is affirmed.

Nos. 80182, 80184--Appellate court affirmed in part

                                                    and reversed in part;

                                                  circuit court affirmed.

                                                     No. 80246--Affirmed.

                                                                         

     CHIEF JUSTICE BILANDIC took no part in the consideration or

decision of this case.

     JUSTICE HEIPLE, concurring in part and dissenting in part: 

     Having initially been adjudicated to be an incompetent, Mr.

Wellman was made a ward of the court and a guardian was appointed.

Later, the wardship was terminated and the guardian was discharged.

The guardian appealed. Soon thereafter, Mr. Wellman died.

     The majority opinion holds, in part, that the termination of

the wardship and the discharge of the guardian deprived the

guardian of his standing to appeal. I disagree as a matter of

public policy. Trial courts can be wrong. In this case, for

instance, if the trial court was in error and misperceived Mr.

Wellman's true condition, the only way to protect his estate and to

remedy the situation would be to afford the discharged guardian a

right to appeal. We know, in fact, that, at an earlier time, Mr.

Wellman was found to be elderly, ill, confused, and unable to

properly care for himself. Surely, a restoration decision should at

least be subject to the possibility of review. Otherwise, an

erroneous order of restoration might facilitate the wasting and

dissipation of the former ward's estate. If, as the majority rules,

the former guardian has no right to take an appeal, then, quite

simply, there is no appeal since no one else is in a position to

bring it.

     I, of course, agree with the majority's position that the

death of the ward terminated the guardian's standing to appeal.

However, on the salient and important point of whether a guardian

should be allowed to appeal a restoration order, I respectfully

dissent. As a matter of public policy, a guardian should retain the

right to appeal the restoration of a person previously declared to

be incompetent.

     JUSTICE McMORROW joins in this partial concurrence and partial

dissent.