NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230248-U

NO. 4-23-0248

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ESTATE OF ALICE ANDERSON, an Alleged | ) | Appeal from the |
| Person | ) | Circuit Court of |
| with a Disability, | ) | Rock Island County |
| | ) | No. 21P199 |
| (Robert Anderson, | ) | |
| Petitioner-Appellee, | ) | |
| v. | ) | Honorable |
| Alice Anderson, | ) | Linnea E. Thompson, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justice Lannerd concurred in the judgment.
Justice Doherty dissented.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding respondent forfeited her argument the trial court's procedure of contemporaneously deciding her motion for a directed finding and the merits of the case denied her the right to present evidence when respondent never objected to that procedure.

¶ 2    In June 2021, petitioner, Robert Anderson, petitioned to be named guardian of the person and the estate of respondent, Alice Anderson, alleging respondent needed immediate medical care and was unable to consent to necessary treatment or execute appropriate releases of information to access insurance coverage for medical care. After hearing petitioner's evidence, the trial court granted respondent's motion for a directed finding as to guardianship of the estate. Respondent's counsel stated she had no witnesses. The court then addressed respondent's motion for a directed finding as to guardianship of the person. In doing so, the court found on

the merits petitioner had shown respondent was a person with a disability in need of a guardian. The court appointed the Office of the State Guardian (OSG) to serve as guardian of the person, pending OSG's acceptance of the appointment. Respondent's counsel did not object, ask to present evidence, or file a posttrial motion alleging any error in the court's procedure of contemporaneously deciding the motion for a directed finding and the merits.

¶ 3 On appeal, respondent contends the trial court's procedure of contemporaneously deciding the motion for a directed finding and the merits denied her the right to be heard and present evidence. We determine respondent forfeited her argument. Accordingly, we affirm.

¶ 4 I. BACKGROUND

¶ 5 Petitioner, respondent's husband, sought to be named guardian of the person and the estate of respondent. The trial court held a hearing on the merits in December 2022 and January 2023. Evidence at the hearing generally showed respondent was 76 years old and petitioner was 75. Respondent suffered from medical issues and had limited mobility. Respondent required physical assistance to take care of her basic needs. However, there was evidence she did not suffer from dementia or mental impairment and was mentally competent to make decisions about her finances and care. Meanwhile, petitioner was unable to care for respondent because of his own health problems. Respondent had home caregivers, but they were not employed 24 hours a day. Petitioner presented evidence he and respondent disagreed about the amount of care respondent needed, and respondent wished for petitioner to provide care for her that he believed he could no longer provide. Petitioner presented evidence respondent needed 24-hour care, and there would be significant and necessary cost savings if respondent moved into an assisted living facility rather than pay for 24-hour care at home.

¶ 6 After hearing petitioner's evidence, the following colloquy occurred:

"THE COURT:  Okay.  We will look to you, then, next, [respondent's counsel].

[RESPONDENT'S COUNSEL]:  My—my client has asked for an opportunity to speak to you and to speak—she's doing this against my advice, and she understands that by doing this and speaking to you that she understands that anytime that she's speaking to you that she—anything that she says, that [petitioner's counsel] has a chance to ask questions, that [the guardian *ad litem*] will also have an opportunity to ask questions, and the judge, Judge Thompson, will also have an opportunity to ask questions with this.  I believe that she needs to be sworn in, if she is going to be speaking.

THE PETITIONER:  Why don't—why do you say the decision hasn't been made?

[RESPONDENT'S COUNSEL]:  Until the judge makes a decision, the decision has not been made.

THE PETITIONER:  Well, then, wouldn't you want to speak, if you were me?

THE COURT:  Do you need a minute?  I can take you off the—

(Counsel confers with client.)

THE COURT:  Do you need a minute?

(Counsel confers with client.)

[RESPONDENT'S COUNSEL]:  I'm asking for a directed verdict, Your Honor, on several count—several reasons.  I'm asking for a directed verdict regarding the guardian of the estate."

Although the transcript of the above colloquy attributed statements to petitioner, the parties agree it was actually respondent speaking.

¶ 7        The trial court asked about addressing motions for a directed finding as to guardianship of the estate and guardianship of the person separately. During that discussion, respondent's counsel stated, "I have no witnesses for—for this case." After hearing arguments from counsel, the court granted respondent's motion for a directed finding as to guardianship of the estate.

¶ 8        Counsel for respondent next argued in favor of a directed finding regarding guardianship of the person, contending respondent was able to adequately arrange for her own personal care. During the argument, in response to an objection, the trial court stated, "I'll allow it in the closing argument—or it's not really a closing argument—in support of the motion." Petitioner's counsel next argued against the motion, arguing the evidence showed respondent was unable to adequately care for herself and needed care in a residential facility.

¶ 9        After hearing the arguments of counsel, the trial court discussed the merits of the case at length and, without specifically stating it was denying the motion for a directed finding or inquiring if respondent had any additional evidence, found petitioner had shown respondent was a person with a disability in need of a guardian. The court appointed OSG to serve as guardian of the person, pending OSG's acceptance of the appointment. The court clarified it authorized petitioner to investigate assisted living facilities with respondent's input and stated, once placement was found, it would then appoint OSG, "who will then be responsible for future placement and oversight." The court stated the parties could reconvene in 45 days for a status hearing. Respondent's counsel did not object, ask to present evidence, or file a posttrial motion

- 4 -

alleging any error in the court's procedure of contemporaneously deciding the motion for a directed finding and the merits.

¶ 10        The trial court also told respondent:

> "You do have the power in the future to ask the Court, which initially would be me, to change my mind, revoke the power, change the power, pick somebody else to do it, tell me that you don't need it anymore, and you can do that in ways that nobody else can do in any other type of case. You can do it by phone call, e-mail, personally showing up at the courthouse, writing a letter, formally doing it, hiring an attorney to do it for you, asking someone else to do it for you."

Nothing in the record indicates respondent contacted the court seeking to change its mind.

¶ 11        On January 20, 2023, in a written order, the trial court stated it granted respondent's motion for a directed finding as to guardianship of the estate. The court stated it denied respondent's motion for a directed finding as to guardianship of the person. The court then found by clear and convincing evidence respondent was a person with a disability and was incapable of managing her person. The court directed petitioner to investigate and make a residential placement for respondent. The court appointed OSG as guardian of the person and stated respondent's counsel would contact OSG regarding the appointment. The court stated letters of guardianship would issue upon OSG filing an acceptance of the appointment. The court further ordered the parties to schedule a status hearing within 45 days. Finally, the court wrote: "This Order is final and appealable in all respects only after OSG files its acceptance of office, after which letters may issue."

¶ 12 On February 22, 2023, a status hearing was held. At the hearing, while discussing respondent's preference for the location of a residential placement, respondent expressed concern about her counsel not being allowed to speak and also stated, "I never have gotten to speak at all." The trial court told respondent, "I think you were given more than ample opportunity. Do you want to give up your right for your attorney to speak for you because that's normally what we would advise people?" Respondent stated she wanted her attorney to be able to tell the court "what I told her last night on the phone and Saturday." Petitioner's objection that the matter was not an evidentiary hearing was sustained. Later in the hearing, respondent's counsel noted respondent wished to appeal. The record suggests OSG was not willing to accept the appointment until residential placement had been arranged. The court indicated appealing before OSG was appointed would be premature.

¶ 13 On March 17, 2023, the trial court entered an order stating OSG had filed its acceptance of the appointment. The court further wrote, "the Court's order of January 20, 2023, is final and appealable in all respects as of the date of entry of this Order." The court also entered a separate order to appoint OSG as guardian. That same day, respondent filed her notice of appeal.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, respondent contends the trial court's process of contemporaneously deciding the motion for a directed finding and the merits denied respondent her right to be heard and present evidence.

¶ 17 A. Jurisdiction

- 6 -

¶ 18        Both parties state this court has jurisdiction, although respondent also suggests the trial court's January 20, 2023, order should have been final and appealable.  If it was, respondent's appeal filed on March 17, 2023, was arguably untimely.  "Before addressing the merits of this appeal, we have an obligation to determine whether we have jurisdiction, even though the issue was not raised by the parties."  *In re Estate of Devey*, 239 Ill. App. 3d 630, 632, 607 N.E.2d 685, 686 (1993).  "The jurisdiction of the appellate court is limited to the review of appeals from final judgments, subject to statutory or supreme court exceptions."  *Devey*, 239 Ill. App. 3d at 632, 607 N.E.2d at 686.

¶ 19        A notice of appeal must be filed within 30 days after the final judgment appealed from was entered or, if a timely posttrial motion directed against the judgment was filed, within 30 days after the order was entered disposing of the last pending posttrial motion directed against the judgment.  Ill. S. Ct. R. 303(a) (eff. Jul. 1, 2017).  In general, a nonfinal order is not appealable except under the provisions of Illinois Supreme Court Rule 304 (eff. March 8, 2016).  Rule 304(a) allows for an interlocutory appeal in instances where a final judgment is entered as to one party or claim, but fewer than all parties or claims.  Rule 304(a) allows such an interlocutory appeal "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."  Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).  However, Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016) provides a judgment or order entered in the administration of a guardianship which finally determines a right or status of a party is appealable without such a special finding.

¶ 20        While Rule 304(b)(1) allows an appeal without a special finding, "[n]ot every order entered in an estate proceeding must be immediately appealed; only those orders that finally determine the right or status of a party may be appealed under Rule 304(b)(1)."  *In re*

*Estate of Nelson*, 250 Ill. App. 3d 282, 285, 621 N.E.2d 81, 84 (1993). "An order does not finally determine the right or status of a party when it contemplates future action." *Nelson*, 250 Ill. App. 3d at 285, 621 N.E.2d at 84.

¶ 21 Here, the January 20, 2023, order did not finally determine the right or status of any party because it contemplated future action. The trial court specifically noted OSG would have to accept the appointment as guardian and would be formally appointed only after it had done so. We further note the finality of judgments prevents multiple lawsuits and piecemeal appeals, and Rule 304(b)(1) promotes efficiency and certainty as to specific issues during the often lengthy process of estate administration. *Devey*, 239 Ill. App. 3d at 632-33, 607 N.E.2d at 686-87. If the January 20, 2023, order was considered the final order, had respondent desired to appeal the court's choice of guardian, she would have been required to do so before the guardian was finally determined. The matter would be further complicated if OSG then declined the appointment, requiring the appointment of an alternate guardian after an appeal was filed. Such circumstances are contrary to the purpose of Rule 304(b)(1).

¶ 22 In addition, the trial court here ordered respondent to remain in charge of her own estate. To that end, the court may have believed section 11a-5(b-5)(1) of the Probate Act of 1975 (755 ILCS 5/11a-5(b-5)(1) (West 2022)) applied. That section provides:

> "The court may appoint separate individuals or entities to act as the guardian of
> the person and the guardian of the estate of a person with a disability if the court
> finds it is in the best interests of the person with a disability that separate
> guardians be appointed. *The court shall not appoint a separate person or entity to
> act as guardian of the person or guardian of the estate with a public guardian or*

*[OSG] unless the public guardian or [OSG] agrees to such an appointment*."

(Emphasis added).  755 ILCS 5/11a-5(b-5)(1) (West 2022).

Further, a "proposed guardian must:  (1) *be capable of providing an active and suitable program of guardianship for the disabled person*; (2) be at least 18 years old; (3) be a resident of the United States; (4) be of sound mind; and (5) generally not be convicted of a felony."  (Emphasis added).  *In re Estate of McHenry*, 2016 IL App (3d) 140913, ¶ 141, 60 N.E.3d 930.

¶ 23  Under the above principles, OSG would have to be capable and willing to work with respondent, who would be paying for her own care.  Meanwhile, the trial court was arguably hindered from finally ordering respondent to remain guardian of her estate until OSG accepted the appointment.  As a result, until OSG accepted the appointment, the order contemplated future action, and any appeals carried the distinct risk of leading to piecemeal and inefficient litigation that lacked certainty as to the specific issue of respondent's guardian of the person.  As a result, we determine the January 20, 2023, order was not appealable under Rule 304(b)(1), and respondent's failure to appeal from that order does not bar her attack on the order at this time.  Respondent timely appealed from the March 17, 2023, order, which is the order that finally determined her status.

¶ 24  B. Forfeiture

¶ 25  Respondent's sole argument on appeal is the trial court erred by determining the merits of the action contemporaneously with its denial of her motion for a directed finding without allowing her to testify or otherwise present evidence.  Petitioner argues respondent forfeited the issue by failing to object to the procedure followed by the court.  We agree.

¶ 26  "The failure to object to an alleged error at trial ordinarily results in forfeiture of the issue on appeal."  *In re Benny M.*, 2017 IL 120133, ¶ 43, 104 N.E.3d 313.  More specifically,

"[w]here it is contended that the procedure of the trial court is in error, the failure to object to such procedure in the trial court precludes its review." *Redmond v. Central Community Hospital*, 65 Ill. App. 3d 669, 678, 382 N.E.2d 95, 102 (1978).

¶ 27    Here, while there were indications respondent may have wished to testify, after consultation with counsel, she did not do so. Meanwhile, respondent's counsel specifically told the trial court she had no witnesses to present. Thus, at the time the court ruled on the motion for a directed finding, it would have had nothing left to do afterward but also determine the merits. Respondent did not object to the court ruling on the merits at any time. Had respondent wished to preserve the issue, she could have objected during the hearing. Respondent also did not raise the issue in any posthearing motions or take advantage of the court's admonition that she could ask the court to change its mind at any time.

¶ 28    Respondent has not made any argument to excuse the forfeiture. See *Benny M.*, 2017 IL 120133, ¶ 46. She also does not argue plain error applies. While a reviewing court may consider an unpreserved claim of error for plain error, a forfeited error in a civil case, such as this, may be reviewed under the doctrine of plain error only in "exceedingly rare" cases. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 8, 871 N.E.2d 859, 865 (2007). Further, the burden is on the appellant to establish plain error, and if he or she does not argue for a plain-error analysis, then any plain-error contention is forfeited. See *People v. Hillier*, 237 Ill. 2d 539, 550, 931 N.E.2d 1184, 1190 (2010); *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 57, 103 N.E.3d 1059. Accordingly, we find respondent forfeited her argument the trial court erred by deciding the merits of the matter without allowing her to be heard.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, the trial court's judgment is affirmed.

- 10 -

¶ 31    Affirmed.

¶ 32    JUSTICE DOHERTY, dissenting:

¶ 33    I believe that this appeal should be dismissed for lack of jurisdiction, so I respectfully dissent.

¶ 34    The matter in dispute on appeal is whether the trial court properly found that respondent was an adult with a disability in need of a guardian pursuant to section 11a-3 of the Probate Act of 1975 (755 ILCS 5/11a-3 (West 2022)).  The trial court's order of January 20, 2023, made respondent a "ward of the court," parlance no longer used in the Probate Act, but which accurately describes the change in respondent's legal status.  Once there is a declaration of disability, "the trial court functions in a central role which permits it to oversee and control all aspects of the management and protection of the [respondent's] estate." *In re Estate of Berger*, 166 Ill. App. 3d 1045, 1055 (1987).

¶ 35    Because it cannot as a practical matter undertake day-to-day responsibility for the disabled person's affairs, the trial court appoints a guardian, answerable to the court, to tend to these responsibilities on its behalf.  As discussed below, I believe that this occurred in this case on January 20, 2023, when the trial court appointed OSG as guardian.  Even if the court had decided to wait until some later day to appoint a guardian, however, its critical ruling was already made: respondent was adjudicated a disabled person. Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016) provides that "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" is immediately appealable on an interlocutory basis without further finding.  Respondent's status as a disabled person was determined on January 20, 2023; her notice of appeal was not filed within 30 days of that order, so it is untimely.

¶ 36    I believe it is unwise to rely, as the majority does, on *In re Estate of Nelson*, 250 Ill. App. 3d 282, 285 (1993), for the broad proposition that "An order does not finally determine the right or status of a party when it contemplates future action."  Note that the action at issue in *Nelson* was the appointment of a guardian *ad litem* for the purpose of investigating the disabled person's living conditions; no party's legal status was affected.  *Id.*  The fundamental defect in the proposition stated, however, is that it proves too much: future action in an adult guardianship is *always* contemplated, right up to the approval of the final guardianship report and closing of the estate.  Here, the trial court's order left no room for confusion: there was no future action contemplated with respect to the adjudication of respondent's disability, the determination that triggered Rule 304(b)(1) in this case.

¶ 37    Appointment of a guardian can be, and often is, made at the same time as the adjudication of disability.  Even then, however, "before undertaking" the duties of the office, the guardian named by the trial court must post an appropriate oath and bond.  755 ILCS 5/12-2(a) (West 2022.)  If the appointed guardian fails to undertake these steps, or if the appointed guardian simply declines to serve, the guardianship appointment fails, but the adjudication of disability is unaffected.  The fact that these further actions are contemplated does not render the adjudication of disability non-final as to the disabled person.  Similarly, while a future change in the appointed guardian might permit a future appeal *as to that ruling* (see *Stuck v. Cook County Public Guardian*, 387 Ill. App. 3d 867, 876 (2008)), it would not affect the prior adjudication of disability. The disabled person retains the right, of course, to seek termination of the guardianship. See 755 ILCS 5/11a-20 (West 2022).

¶ 38    Beyond the legal principles set forth above, the record is clear that the trial court *did* appoint OSG as respondent's guardian even if it harbored some question about whether the

appointment would be accepted. The order stated, without equivocation, "The Court appoints [OSG] as Plenary Guardian of the Person" of respondent. When the court entered additional appointment orders on March 17, the court was simply doing again what it had already done two months before. The final proof that no "future action" was anticipated on January 20, 2023, is that no additional action of substance was taken in March.

¶ 39     Respondent's brief also shows recognition of the fact that the January 20 order "should have been final and appealable," but concludes it was not so only because the trial court "erred in delaying the appealability of its own order." This is a point that simply must be made: while there are limited circumstances under which a trial court's finding is necessary to make an order appealable (see, *e.g.*, Illinois Supreme Court Rule 304(a) (eff. March 8, 2016)), a trial court does not have general authority to override what the Supreme Court Rules establish concerning what constitutes an appealable order. It is regrettable that the trial court misinformed respondent in this regard. Unfortunately for respondent, parties, and attorneys "are not excused from following the filing requirements" of Illinois Supreme Court Rules on appeal "merely because a judge has recommended a procedural route that lies beyond the judge's authority to travel." *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 150 (1994). Trial courts should operate under the assumption that appealability is determined according to Illinois Supreme Court Rules; trial court findings have a place in that determination only where the rules explicitly provide for it.

¶ 40     In conclusion, respondent's main contention on appeal is that she should not have been adjudicated a disabled person. The adjudication of disability was set forth in the trial court's order of January 20, 2023, and respondent failed to appeal it within 30 days. Consequently, we lack jurisdiction over this appeal.