No. 1-05-2606

FIRST DIVISION
Filed: 6-29-07

| | | |
|---|---|---|
| HAROLD MATTHEWS and PHYLLIS MATTHEWS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| AVALON PETROLEUM COMPANY, PETROLEUM TECHNOLOGIES EQUIPMENT, INC., ALLIED DRYWALL MATERIALS AND MANAGEMENT CORPORATION; and ALLIED DRYWALL MATERIALS AND MANAGEMENT CORPORATION d/b/a Allied Drywall Materials Corporation, | ) ) ) ) ) ) ) | No. 01 L 14714 . Honorable |
| Defendants-Appellees. | ) ) ) | Timothy P. Murphy, Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

This is a slip and fall case. Plaintiff Harold Matthews, a truck driver, sued defendants to recover for injuries sustained when he tripped and fell over a piece of metal jutting up near a fuel pump. He sued defendant Avalon Petroleum Company (Avalon), the owner of the fuel pump, on a claim of premises liability; he sued defendant Petroleum Technologies Equipment, Inc. (PTE), which Avalon called to repair the pump, for failing to make timely repairs, and he sued defendant Allied Drywall Materials Management Corporation (Allied), whose driver hit the fuel pump and caused the damage. Plaintiff Phyllis Matthews brought claims against all three defendants for loss of consortium and time from work and for her husband's medical bills. The jury found for defendants, and plaintiffs brought this appeal alleging numerous errors at trial. For

the reasons set forth below, we affirm.

BACKGROUND

On July 24, 2001, plaintiff Harold Matthews, a 60-year-old truck driver, tripped and fell over a piece of metal jutting up from a fuel pump island on property owned by defendant Avalon and located on South Crawford Avenue in Markham, Illinois. Plaintiff sustained a fractured hip, resulting in surgery with the placement of screws and metal plates to set the fracture. Plaintiff claims that he is disabled for work return.

Defendant Avalon, which owned the subject pump, is a corporation that sells fuel to truck drivers. Defendant Allied is a corporation that purchases fuel for its trucks at Avalon and whose driver, Charles Smith, struck the fuel pump with his truck on July 3, 2001, causing the metal jutting found in the fuel pump island. The collision caused a piece of metal rim or rail along the bottom of the fuel island to point up several inches. Defendant PTE is a corporation that installs and repairs fuel pumps that was called by Avalon on July 9 to assess and repair the damage. PTE came on July 9 to assess the damage and made some intermediate repairs, such as removing a light pole and straightening a vent pipe. The metal rim was not repaired until July 31, 2001, a week after plaintiff fell, because a needed part was not in stock and PTE had to order it.

Plaintiff drove a tractor-trailer truck for Vans, Inc. (Vans), a wholesale florist supply company, which required its drivers to purchase fuel at Avalon. At the end of his work day, plaintiff was required to go to Avalon to fill up the fuel tanks on the truck prior to returning to the Vans' warehouse. When plaintiff returned to work in early July after a vacation and prior to his injury, he noticed that the fuel pump had been damaged and was aware of the metal jutting up

2

from the fuel pump. Between the time when he first noticed the metal and the time of his injury, he filled up the truck 10 to 12 times at the damaged fuel pump without incident.

Plaintiff testified at trial that at the time that he fell, he did not know what caused him to fall. However, "when [he] looked at the photographs" of the damaged fuel pump, he then "realized" that he had "stepped on the piece of metal that was sticking up." After he fell and was still in the hospital, his daughters visited Avalon, took photographs and showed him the photographs of the damaged pump. Plaintiff testified that it was his review of the photographs that made him realize what had happened.

At trial, plaintiff testified that his work boot became caught on the metal rim. Then on cross-examination he was impeached from his deposition testimony, where he denied that his work boot had caught on the metal rim and claimed that his foot had slipped out from under him. He then testified: "I know what I did. I stepped on the piece of metal."

The jury was given a special interrogatory which said: "Do you the jury find that Avalon Petroleum could reasonably expect that a reasonable person in Mr. Matthews' position knowing of the condition of the damaged portion of the island would proceed to encounter that damaged portion of the island because the advantage of doing so outweighed the apparent risk?" The jury answered yes to the special interrogatory, but returned a general verdict for defendants. The trial court then heard arguments on plaintiffs' posttrial motion, which was denied, and this appeal followed.

Plaintiffs raise six claims of error by the trial court on appeal: (1) that the jury's general verdict for the defendants was inconsistent with its response to the special interrogatory, and as a

3

result plaintiff should have been granted a new trial; (2) that "the trial court applied the wrong standard for determining defendant Avalon's liability;" (3) that the trial court refused to allow deposition impeachment testimony of Avalon's operations manager, Charles Stubblefield; (4) that the trial court allowed Stubblefield to give undisclosed expert opinion testimony; (5) that the trial refused to admit evidence of defendants Avalon and PTE's failure to barricade or place warning signs; and (6) that the trial court allowed a jury instruction on issues which stated that "defendants claim" that plaintiff "failed to avoid an obvious danger that he was aware existed while entering upon the fuel island."

## ANALYSIS

Plaintiffs raise several different claims on appeal, which require different standards of review. "[A] standard of review applies to an individual issue, not to an entire appeal. Each question raised in an appeal is subject to its own standard of review." Redmond v. Socha, 216 Ill. 2d 622, 633 (2005). This opinion will discuss the respective standard of review prior to the discussion of each claim.

First, plaintiffs claim that they must be granted a new trial because the jury's general verdict for defendants was inconsistent with its response to the special interrogatory. None of the parties discussed the standard of review in their appellate briefs. Redmond was the first Illinois decision, either from the supreme court or the appellate court that expressly stated that the determination of legal inconsistency is a question of law and thus subject to de novo review. Redmond, 216 Ill. 2d at 633. Thus, this court will apply de novo review to plaintiffs' claim of inconsistency. Redmond, 216 Ill. 2d at 642 ("whether two verdicts are legally inconsistent is a

question of law" which "is subject to <u>de novo</u> review"); <u>DiMarco v. City of Chicago</u>, 278 Ill. App. 3d 318, 322 (1996) (<u>de novo</u> review applied where special interrogatory conflicted with general jury verdict).

The Illinois Supreme Court has held that when "a special interrogatory does not cover all the issues submitted to the jury," a court will not grant a new trial so long as any " 'reasonable hypothesis' exists" to construe the general jury verdict consistent with the jury's response to the special interrogatory. <u>Simmons v. Garces</u>, 198 Ill. 2d 541, 556 (2002); <u>Redmond</u>, 216 Ill. 2d at 644 ("verdict or verdicts will not be considered irreconcilably inconsistent if supported by any reasonable hypothesis"); <u>DiMarco</u>, 278 Ill. App. 3d at 322. In construing the verdict, a court must "exercise all reasonable presumptions in favor of the verdict." <u>Redmond</u>, 216 Ill. 2d at 643; <u>Simmons</u>, 198 Ill. 2d at 556.

With this procedural framework in mind, "our review of the circuit's decision is governed by the elements of the cause of action alleged by plaintiffs in their complaint[]." <u>McClure v. Owens Corning Fiberglass Corp.</u>, 188 Ill. 2d 102, 133 (1999). In their third amended complaint, plaintiffs alleged: (1) claims for premises liability against all three defendants; (2) a claim against only Allied for negligently damaging the gas pump island; (3) a claim against PTE for failure to repair; and (4) claims against all three defendants by Phyllis Matthews for loss of consortium, loss of time from work, and liability for her husband's medical expenses. At trial, the jury was asked to consider the claim of premises liability against only Avalon.

The special interrogatory asked the jury to answer either yes or no to the following question:

"Do you the jury find that Avalon Petroleum could reasonably expect that a reasonable person in Mr. Matthews' position knowing of the condition of the damaged portion of the island would proceed to encounter that damaged portion of the island because the advantage of doing so outweighed the apparent risk?"

The interrogatory at issue asked only about defendant Avalon, and the only cause of action against Avalon (other than the wife's derivative claims) was premises liability.

"[I]n construing the meaning of a special interrogatory, courts must examine it in light of the jury instructions to determine how the jury understood the interrogatory." DiMarco, 278 Ill. App. 3d at 322. The trial court gave Illinois Pattern Jury Instructions, Civil, No. 120.09 (2005) about Avalon's premises liability, and neither party disputes the propriety of giving this instruction. The trial court told the jurors that in order for plaintiffs to recover against Avalon, they had to find that plaintiff had proven all of the following six elements:

"[1] there was a condition on the fuel island which presented an unreasonable risk of harm;

[2] Avalon knew or in the exercise of ordinary care should have known of both the condition and the risk;

[3] Avalon could reasonably expect that a reasonable person in the plaintiff's position knowing of the condition would proceed to encounter it because the advantage of doing so outweighs the apparent risk;

6

[4] Avalon was negligent;

[5] plaintiff was injured; and

[6] Avalon's 'negligence was a proximate cause of the

plaintiff's injury.' "

The trial court then instructed the jury concerning contributory negligence. The court told the jurors that if they found that "Plaintiff's contributory negligence was more than 50% of the total proximate cause of the injury *** then [their] verdict should be for Defendant Avalon."

In denying the plaintiff's posttrial motion, the trial court found there was a reasonable hypothesis for construing the jury's verdict as consistent with its interrogatory response. The "jury could have concluded that the plaintiff was more than 50 percent contributorily negligent."

While this court reviews the trial court's decision de novo, we agree with the trial court. Plaintiffs claim on appeal that element number 3, the subject of the interrogatory, was the only element in dispute and that they had proved the other five out of six elements listed in the jury instruction. Even if plaintiffs are correct in assuming that the jurors found that plaintiffs had carried their burden with respect to the other five elements, the jury could still have found for the defendants by finding the plaintiffs were more than 50% contributorily negligent. Plaintiffs do not claim that there was insufficient evidence in the record to find Harold Matthews negligent.

Second, plaintiffs claim that "the trial court applied the wrong standard for determining defendant Avalon's liability." In support of this claim, plaintiffs point to comments by the trial court allegedly made in front of the jury and allegedly misstating the law. In essence, plaintiffs appear to claim that the trial judge misinstructed the jury concerning the law during the

7

evidentiary phase of trial and prior to the jury instructions.

"A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 274 (2002); Lange v. Freund, 367 Ill. App. 3d 641, 645 (2006). Plaintiffs alleged that the court made three misstatements of law to the jury. First, the court stated to plaintiffs' counsel: "Whatever Avalon knew at the time is not relevant to your case." Second, the court stated with respect to Avalon's knowledge: "That's not a relevant issue for your presentation of your case as far as I'm concerned." Contrary to plaintiffs' claim, both of these comments appear to have been made during a colloquy among counsel and the court, after counsel had approached the bench.

The third alleged misstatement was:

> "I just wanted to let you know that in considering what is or is not in controversy, I think that you have already heard that the damage to the gas pump island at Avalon, the damage occurred on July 3, 2001. We know that Mr. Matthews claims injury on July 24 of 2001. We also know that Avalon expected that its customers would be walking on or around that gas pump island during this period of time.
>
> But you should also know that there are other issues that you're going to need to decide about the ability of those customers to utilize the gas pump and that card machine without encountering

8

that damaged section of that island."

Plaintiffs' attorney failed to preserve this issue for review by failing to object to the statement at the time it was made. Although the plain error doctrine permits an appellate court to review claims of error not properly preserved at trial, the use of this doctrine in civil cases is " 'exceedingly rare.' " Jones v. Rallos, 1-04-2979, slip op. at 22 (2006), quoting Dowell v. Bitner, 273 Ill. App. 3d 681, 693 (1995). "[T]his doctrine is applied in civil cases only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process itself." Lange, 367 Ill. App. 3d at 649.

The third alleged misstatement could not have resulted in any prejudice to plaintiffs. The instruction concerned the reasonableness of plaintiff Harold Matthews' continuing to encounter a known danger, which was an issue that the jury resolved in plaintiffs' favor by answering yes to the special interrogatory. The jury specifically found that "Avalon Petroleum could reasonably expect that a reasonable person in Mr. Matthews' position knowing of the condition of the damaged portion of the island would proceed to encounter that damaged portion of the island because the advantage of doing so outweighed the apparent risk." Thus, the alleged statement caused no prejudice, and certainly did not rise to the level required under the plain error rule.

Plaintiffs' third claim on appeal is that the trial court refused to allow the impeachment of Avalon's operations manager, Charles Stubblefield, or in the alternative refused to allow his discovery deposition to be read to the jury. " 'The admission of evidence in a trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.' " Brax

v. Kennedy, 363 Ill. App. 3d 343, 355 (2005), quoting Skubak v. Lutheran General Health Care Systems, 339 Ill. App. 3d 30, 36 (2003). "An abuse of discretion exists where no reasonable person would agree with the position of the trial court." Brax, 363 Ill. App. at 355.

Plaintiffs claim on appeal that they should have been allowed to impeach Stubblefield after he testified at trial as follows:

> "Q. Now, there were conditions, damage, caused from this
>
> collision which caused portions of the pump to be protruding into
>
> areas where people walked, correct?
>
> A. No."

Plaintiffs sought to impeach Stubblefield with that portion of his deposition testimony where he had testified:

> "Q. Other than the concrete abatement being pushed
>
> forward in a northerly direction, was there anything about the
>
> condition that was sticking out or protruding into areas where
>
> individuals would walk?
>
> A. Yes."

The quoted deposition question was a compound question. As a result, it is unclear to which part of the question Stubblefield was answering yes. Stubblefield's answer could have been a yes either to the assertion that there was a condition "that was sticking out," or to the assertion that a condition was "protruding into areas where individuals would walk." The former assertion would not conflict with his trial testimony; the latter assertion would.

10

In questions following almost immediately at his deposition, Stubblefield clarified that he meant the former assertion:

"Q. Was that sticking out in an east-west direction or an up-and-down direction?

A. Upward.

Q. So it wasn't sticking out into the path of someone walking beside the concrete abutment?

A. No."

Thus, Stubblefield clarified that he meant that the condition was "sticking out" in "an up-and-down direction" but not into areas where someone would walk

Plaintiffs argue on appeal that the last question and its answer represent a double negative, so that Stubblefied was in effect saying yes to the question that the condition was sticking into someone's path. However, plaintiffs' interpretation ignores Stubblefield's prior answer where he made it clear that he was saying that the condition jutted "upward," but not out into someone's path.

At trial, the court read this portion of Stubblefield's deposition testimony and stated: "I'm missing the impeachment part here." Plaintiffs' counsel then argued to the trial court, as it argued in its brief to this court: "But he said [in his deposition] it's where people have to walk. That's the part I want to read. He said [at trial] it wasn't where they had to walk." The trial court responded: "I don't read it that way." A "reasonable person" could certainly agree with the position of the trial court. Brax, 363 Ill. App. at 355. This court can find no abuse of discretion.

11

No. 1-05-2606

<u>Brax</u>, 363 Ill. App. at 355.

Plaintiffs' fourth claim on appeal is that the trial court committed error by allowing Stubblefield to give undisclosed opinion testimony at trial in violation of Illinois Supreme Court Rule 213. " 'The admission of evidence pursuant to Rule 213 is within the sound discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of that discretion.' " <u>White v. Garlock Sealing Technologies, LLC</u>, 4-06-0688, slip op. at 25 (2007), quoting <u>Sullivan v. Edward Hospital</u>, 209 Ill. 2d 100, 109 (2004). As noted before, a trial court abuses its discretion only if "no reasonable person would agree with the position of the trial court." <u>Brax</u>, 363 Ill. App. at 355.

In its amended Rule 213(f) disclosure, defendant Avalon identified Stubblefield as both a lay witness and a controlled expert witness. A "lay witness" is defined as "a person giving only fact or lay opinion testimony" (210 Ill. 2d R . 213(f)(1)). For a lay witness, a party has to disclose only "the subjects on which the witness will testify" (210 Ill. 2d R. 213(f)(1)).

A "controlled expert witness" is defined as "a person giving expert testimony who is the party, the party's current employee, or the party's retained expert" (210 Ill. 2d R. 213(f)(3)). Since Stubblefield was an employee of defendant Avalon, if he gave opinion testimony, he qualified as a controlled expert,.

With respect to a controlled expert witness, Rule 213 requires a party to disclose:

> "[1] the subject matter on which the witness will testify; [2] the
>
> conclusions and opinions of the witness and the bases therefore;
>
> [3] the qualifications of the witness; and [4] any reports prepared by

12

the witness about the case." 210 Ill. 2d R. 213(f)(3).

The rule provides that "[i]nformation expressed in a [discovery] deposition need not be later specifically identified in a Rule 213 answer" (210 Ill. 2d R. 213(g)). If the opposing party objects at trial, "the burden is on the proponent of the witness to prove the information was provided in a Rule 213(f) answer or in the discovery deposition" (210 Ill. 2d R. 213(g)). The proponent also has "a duty to seasonably supplement or amend" any prior Rule 213 answer "whenever new or additional information subsequently becomes known to that party"(210 Ill. 2d R. 213(I)).

Plaintiffs claim that the trial court should have excluded, pursuant to Rule 213, a drawing introduced during Stubblefield's testimony. At trial, Avalon's attorney showed Stubblefield exhibit No. 30, which counsel described as "a sketch" not drawn "to scale" of the fuel pump island. Counsel did not identify who had made the sketch. Avalon's attorney and Stubblefield then drew on the sketch based on Stubblefield's answers about the measurements of the pump. Stubblefield testified that he measured the pump the night before his testimony and that the measurements had not changed since plaintiff's accident in 2001.

Plaintiffs' attorney objected at trial pursuant to Rule 213 to this portion of Stubblefield's testimony. Defendant's attorney responded that defendant's answers constituted purely factual information and that Stubblefield had been questioned about the pump island at his deposition. The trial court permitted the testimony, stating: "That's what it sounds like to me, factual information. It's not [sic] nothing concerning an opinion. There's nothing concerning anything anybody could not have gone out there to measure."

Plaintiffs claim that Stubblefield's testimony violated Rule 213 because his last-minute

13

measurements of the pump formed the basis for his opinion testimony and, thus, had to be disclosed prior to trial. Rule 213(f)(3)(ii) requires the pretrial disclosure of a controlled expert's "opinions," as well as his "bases" for those opinions.

Plaintiffs claim that Stubblefield's measurements formed the basis for his following opinion testimony:

> "Q. If there is no truck on this side, on the west side, are there any obstructions or, you know, any problems that would prevent somebody from walking this 9 feet 7 inches around the west side of the pump if they wanted to get down here to the southeast area?
>
> A. No.
>
> Q. Jeff, to your knowledge between July 3rd and July 24, do you know of any reason why a driver who wanted to get gas at this facility would be required or compelled, or any other words you want to pick, to step over this area that you have circled with reference to Exhibit 30 and step onto the island at that point?
>
> A. No."

Plaintiffs moved for a mistrial on the ground that the previously undisclosed measurements formed the basis for the above opinion testimony.

Plaintiffs' argument ignores the fact that Rule 213 now distinguishes between lay and expert opinions. Kim v. Mercedes-Benz, U.S.A., Inc., 353 Ill. App. 3d 444, 453 (2004). The former Rule 213 did not distinguish between lay and expert opinions, and required the same

detailed disclosure for all opinion witnesses. Kim, 353 Ill. App. 3d at 453. However, under the amended Rule 213, "detailed disclosure for lay witnesses is no longer required." Kim, 353 Ill. App. 3d at 454. Thus, only an expert opinion requires disclosure of the basis of his opinion (210 Ill. 2d R. 213(f)(3)). For a lay opinion, the party has to disclose only the subject matter.

Stubblefield was not testifying as an expert when he stated that there were no physical obstructions present on the site to prevent a person from walking around this particular pump. As the trial court noted, he was merely repeating what the jurors could discern themselves from looking at the photographs introduced in evidence. Since this was not an expert opinion, defendant was not under any duty to disclose its basis, and the trial court did not abuse its discretion by overruling plaintiffs' Rule 213 objection.

Even if the fuel pump measurements did constitute the basis of an expert opinion, the trial court still did not abuse its discretion in permitting the testimony. The Illinois Supreme Court has held that in order to determine whether the exclusion of testimony is a proper sanction for a Rule 213 nondisclosure, a court must consider the following six factors:

> "(1) the surprise to the adverse party; (2) the prejudicial effect of
>
> the testimony; (3) the nature of the testimony; (4) the diligence of
>
> the adverse party; (5) the timely objection to the testimony; and (6)
>
> the good faith of the party calling the witness." Sullivan v. Edward
>
> Hospital, 209 Ill. 2d 100, 110 (2004).

Applying the six Sullivan factors to the case at bar, we find that the trial court did not abuse its discretion in permitting testimony about the fuel pump measurements. First, while

plaintiffs were surprised by the measurements, they could not have been surprised by the opinion itself, because it was the same opinion that Stubblefield provided at his deposition. At trial, he testified that a driver could have walked around the damaged area with the metal protruding without having to step over it. At his deposition, he testified to the same opinion:

"Q. Is it fair to say in looking at the way that this truck is pulled up to the gas pump island, that an individual could walk by the condition without having to step over it?

A. Yes.

* * *

Q. You don't know whether he could have avoided this damage or not in using the pump; correct?

A. I feel he could have avoided the damage."

Regarding the second and third factors, the nature of the testimony and its prejudicial effect, the testimony did not prejudice plaintiffs' case because, as the trial court noted, the jurors could form their own opinion by looking at the photographs of the pump island introduced in evidence. As for the fourth factor, the diligence of the adverse party, the record showed that plaintiffs' daughters visited the accident site shortly after the injury to take photographs, but apparently chose not to take measurements. The fifth factor is the only factor in plaintiffs' favor as he did object at trial on Rule 213 grounds. Sixth, plaintiffs have made no claim of bad faith. In sum, five of the six Sullivan factors favor admission. Thus, this court cannot find an abuse of discretion.

16

Plaintiffs' fifth claim is that the trial court erred by refusing to admit evidence of defendants Avalon and PTE's failure to both barricade the broken portion of the fuel island and post warning signs. As noted before, "'[t]he admission of evidence in a trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.'" <u>Brax v. Kennedy</u>, 363 Ill. App. 3d 343, 355 (2005), quoting <u>Skubak v. Lutheran General Health Care Systems</u>, 339 Ill. App. 3d 30, 36 (2003).

Contrary to plaintiffs' claim, the trial court did permit some evidence concerning Avalon's failure to barricade. At trial, plaintiffs' attorney asked Stubblefield, Avalon's operations manger, the following questions about Avalon's failure to barricade:

"Q. In all normal business hours, except for July 4[th], on July

3rd through July 31, every single day, for full-time, that pump

remained open? It was never closed, correct?

A. Correct.

Q. Nor was it barricaded, correct?

A. Correct.

Q. You know what an orange safety cone is?

A. Yes."

After the last response, defendants' attorneys objected, but the court did not strike Stubblefield's prior answers. The court merely instructed counsel to move on to a different topic. The trial court did bar plaintiffs' counsel from asking Stubblefield whether there was "a sign put up on this pump saying under construction or *** not to use it." Thus, with respect to defendant Avalon,

17

plaintiffs' claim is limited to the exclusion of questions concerning warning signs, not barricades.

Against defendant Avalon, plaintiffs were preceding on a theory of premises liability. The principles of premises liability were clearly set out by the Illinois Supreme Court in LaFever v. Kemlite Co., 185 Ill. 2d 380 (1998). A possessor of premises has a duty to guard against harm to an invitee. LaFever, 185 Ill. 2d at 391. There is an exception to this duty for "open and obvious hazards." LaFever, 185 Ill. 2d at 392; Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78, 105 (2005). The open and obvious rule states that a possessor of land is not liable to invitees for harm caused by any "condition on the land whose danger is known or obvious to them." LaFever, 185 Ill. 2d at 390, quoting Restatement (Second) of Torts, §343A(1), at 218 (1965); Blue, 215 Ill. 2d at 105.

The open and obvious rule has two exceptions: (1) the distraction exception; and (2) the deliberate encounter exception. LaFever, 185 Ill. 2d at 391; Blue, 215 Ill. 2d at 106. The distraction exception states that "the possessor of the premises should anticipate harm to an invitee when the possessor 'has reason to expect that the invitees' attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " LaFever, 185 Ill. 2d at 391, quoting Restatement (Second) of Torts, §343A, Comment F, at 220 (1965). In the instant case, all parties agree that the distraction exception does not apply.

The deliberate encounter exception states that a possessor of premises is liable for an open and obvious hazard "when the possessor 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the

advantages of doing so would outweigh the apparent risk.' " LaFever, 185 Ill. 2d at 391, quoting Restatement (Second) of Torts, §343A, Comment F, at 220 (1965). The deliberate encounter exception was the exception at issue in the case at bar.

As noted, plaintiffs did ask questions about Avalon's duty to barricade, but was barred from asking questions about its duty to warn, such as posting a sign. Plaintiffs wanted to ask questions about a sign because in a deliberate encounter case, plaintiffs must still prove that "the owner's efforts to protect invitees from harm were inadequate." LaFever, 185 Ill. 2d at 396.

In the case at bar, it is difficult to see how a sign would have adequately protected plaintiff from harm. A defendant generally has "no duty to warn" if a reasonable person in the plaintiff's position "would appreciate the danger." Sollami v. Eaton, 201 Ill. 2d 1, 14 (2002). There is no dispute that plaintiff was well aware of the danger, and continued to encounter it. That was why he proceeded under a deliberate encounter theory. Thus, the trial court did not abuse its discretion by excluding questions concerning Avalon's duty to warn.

With respect to PTE, plaintiffs were barred at trial from asking questions about both signs and barricades. In its amended complaint, plaintiffs sued PTE because it "should have already repaired" the pump before plaintiff fell. Accordingly, in the jury instructions, the trial court told the jury that plaintiffs' claim against PTE was for PTE's failure "to remove the jutting up piece of the metal frame." The lack of a warning or barricade had nothing to do with plaintiffs' claim against PTE that it should have already made the repairs, and plaintiffs cite no case connecting the two issues. Plaintiffs cite Esser v. McIntyre, 267 Ill. App. 3d 611 (1994), aff'd by 169 Ill. 2d 292 (1996), which held that defendant, since he did not own the premises, owed plaintiff an ordinary

duty of care for popcorn kernels which he spilled and which plaintiff slipped on, and <u>Godee v. Illinois Youth Soccer Ass'n</u>, 327 Ill. App. 3d 695 (2002), which held that defendant soccer association and coaches owed no duty of care to a mother who slipped and fell in a drainage ditch near her son's soccer game. Neither of these cases has anything to do with a failure to make timely repairs.

Plaintiffs' sixth and final claim is that the trial court erred in its jury instructions when it stated that "defendants claim" that plaintiff "failed to avoid an obvious danger that he was aware existed while entering upon the fuel island." As noted before, "[a] reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." <u>Schultz v. Northeast Illinois Regional Commuter R.R. Corp.</u>, 201 Ill. 2d 260, 274 (2002); <u>Lange v. Freund</u>, 367 Ill. App. 3d 641, 645 (2006).

First, this court notes that plaintiffs' attorney appears to have prepared the instruction about which plaintiffs now complain. At the jury instruction conference among counsel and the court, defense counsel referred to the instruction as "plaintiff's instruction," and plaintiffs' counsel replied:

> "If I could make my record on that point. I put that in there based
> on our discussion last night. Obviously, I wouldn't have just
> voluntarily prepared one with contrib. However, based on our
> discussions yesterday I put it in there so we'd have the instruction
> today."

Thus, the record is unclear as to whether plaintiffs have preserved this claim for our review.

20

However, even if the error was preserved, the claim fails. Plaintiffs claim the court's statement was in error because it ignored the law of deliberate encounter. However, the statement could not have resulted in prejudice to the plaintiffs, because the jurors specifically found for him on the issue of deliberate encounter. By answering yes to the special interrogatory, the jury specifically found that "Avalon Petroleum could reasonably expect that a reasonable person in Mr. Matthews' position knowing of the condition of the damaged portion of the island would proceed to encounter that damaged portion of the island because the advantage of doing so outweighed the apparent risk." Thus, contrary to plaintiffs' claim, the alleged statement did not mislead the jury.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

McBRIDE, P.J. and CAHILL, J., concur.