2020 IL App (1st) 172452-U

SIXTH DIVISION
August 28, 2020

No. 1-17-2452

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 11 CR 18247 |
| | ) | |
| JUAN AVALOS, | ) | Honorable Geary W. Kull, |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Defendant received reasonable assistance of postconviction counsel where postconviction counsel substantially complied with Rule 651(c) and defendant's underlying claims were meritless; affirmed.

¶ 2    Defendant Juan Avalos appeals from the second-stage dismissal of his postconviction petition. In his petition, defendant argued, with the assistance of retained counsel, that his trial counsel had been ineffective for various reasons. The State filed a motion to dismiss. Following a hearing, the circuit court granted the State's motion to dismiss. Defendant filed a motion to reconsider. Following argument on the motion to reconsider, the circuit court denied defendant's

motion. For the reasons below, we affirm the circuit court's dismissal of defendant's second-stage postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4        Following a bench trial, defendant was convicted of three counts of attempted first degree murder and sentenced to concurrent prison terms of 26 years. On appeal, defendant contended that the evidence was insufficient to convict him beyond a reasonable doubt, and that trial counsel was ineffective for not making a closing argument. The details of defendant's bench trial and appeal are discussed in our order on direct appeal, *People v. Avalos*, 2015 IL App (1st) 132656-U, but will be repeated here as necessary for a full understanding of the issues.

¶ 5        Defendant was charged with multiple counts of first-degree murder and aggravated discharge of a firearm for allegedly shooting at Jose Juarez, Jordan Michalak, and Jadrien Reed. *Id.* ¶ 3. At trial, both the State and the defense waived opening statements. *Id.* ¶ 4.

¶ 6        Reed, who was 18 years old at the time of trial, testified that at about 8:24 p.m. on the night in question, he was walking to a party in his honor when he saw Juarez, a long-time friend, with some other people. *Id.* ¶ 5. He then heard gunshots from the other side of nearby railroad tracks. *Id.* He did not see who fired the shots but started running. *Id.* The police arrived immediately and arrested Juarez and Michalak, who Reed knew from the neighborhood. Reed was also arrested. *Id.*

¶ 7        Juarez, who was also 18 years old at the time of trial, testified that he was "unsure" what he was doing at about 8:24 p.m. on July 10, 2011. *Id.* ¶ 6. He recalled walking by himself to Reed's party and that he intended to meet Reed, Michalak, and a group of girls by the railroad tracks. *Id.* He had just met Reed and Michalak when he heard gunshots and fled, without seeing who fired the shots. *Id.* Police arrested him immediately and he was taken to the police station.

*Id*. Juarez refused to identify anyone in the court room as the shooter. *Id*. When shown a photographic array at trial, Juarez admitted seeing it before and acknowledged that his initials were on the array and that one person's photograph was circled. *Id*. However, he did not admit to being shown the array by police detective Frank Schmalz the day after the shooting, or initialing the array. *Id*. Defendant would not identify Detective Schmalz at trial. *Id*.

¶ 8      In his trial testimony, Juarez did not recall being brought to the police station on October 5, 2011, nor could he recall meeting Detective Schmalz, Detective Carlos Garcia, and Assistant State's Attorney (ASA) Tom Sianis that day. *Id*. ¶ 7. He did recognize a five-page typewritten statement bearing his signature on each page, and he admitted that the statement bore a photograph of himself after initially denying that he recognized the photograph. *Id*. At first, he testified that he signed the statement so he could leave the police station, then that he could not recall dictating or signing the statement, and then recalled that he said some of the personal matters therein while denying or not recalling that he said any of the substantive matters. *Id*.

¶ 9      Juarez testified that he had no recollection of going to the courthouse, meeting ASA Andres Almendarez, or testifying before the grand jury on October 6, 2011. *Id*. ¶ 8.

¶ 10     On cross-examination, Juarez testified that he did not recall being given a copy of his statement or his grand jury testimony. *Id*. ¶ 9. He reiterated that he did not know and could not identify who fired the shots on the day in question. *Id*.

¶ 11     Detective Frank Schmalz testified that he investigated the shooting incident on July 10, 2011. *Id*. ¶ 10. He interviewed Juarez in the presence of his mother the following day. *Id*. Juarez was shown a photographic array from which he identified defendant as the shooter. *Id*. Juarez admitted that the shooting was preceded by an argument and then the throwing of rocks at defendant by Juarez and his friends. *Id*. Detective Schmalz also interviewed Michalak and Reed.

*Id*. On October 5, 2011, Detective Schmalz again interviewed Juarez after bringing him to the police station. *Id*. Juarez gave a statement to Detectives Schmalz and Garcia and ASA Sianis, and the latter prepared a typewritten statement. *Id*. The written statement was substantially similar to the grand jury testimony. *Id*.

¶ 12    ASA Almendarez described Juarez's testimony to the grand jury as follows. At about 8:20 p.m. on July 10, 2011, Juarez was walking with Reed and Michalak near the railroad tracks. *Id*. ¶ 12. Juarez knew Reed and Michalak for several years and knew they were in gangs: Reed in the Four Corner Hustlers and Michalak in the Spanish Lords. *Id*. As they walked, they saw defendant and a friend of his. *Id*. Juarez knew defendant to be a member of the Twelfth Street Players gang, and he and defendant had argued earlier that summer. *Id*. As defendant walked towards the group from across the street, he told them he would "get [you] later" and said "Spanish Lord Killer" and "Four Corner Hustler killer." *Id*. The group replied, "Twelfth Street Players killer." *Id*.  The group followed defendant and threw rocks at him until he stopped, drew a gun from his backpack, and fired several shots in the direction of the group. *Id*. The group took cover, but when they looked to see if defendant was still there, he fired again in their direction. *Id*. Juarez heard the bullets striking around them. *Id*.

¶ 13    Juarez testified to the grand jury that he met with Detectives Schmalz and Garcia and ASA Sianis the previous day and was interviewed with his mother's permission. *Id*. ¶ 13. After the interview, Juarez signed a written statement based on his interview that was substantially similar to his grand jury testimony. *Id*.

¶ 14    Police sergeant David Kopka testified that he responded to a reported shooting on the night of July 10, 2011. *Id*. ¶ 15. He detained Reed, Juarez, and Michalak as they fled the scene together, and he found 10 to 15 spent shell casings in two groupings on the ground. *Id*.

4

¶ 15    At the close of the State's case, defense counsel made a motion for a directed finding, arguing that the State failed to make a *prima facie* case as neither eyewitness identified the shooter and their earlier statements were given when they were "of a tender age." *Id*. ¶ 16. Counsel argued that on the date of trial, the State was unable to produce a witness who would identify defendant as the shooter, and did not present any corroborating evidence that defendant had a gun on the day in question or was responsible for the shots. *Id*. Counsel characterized the State's case as unsuccessfully trying to refresh the recollection of their two eyewitnesses. *Id*. The State responded that Juarez identified defendant as the shooter three times – from the photographic array the next day, in his written statement, and in his grand jury testimony – and the shell casings at the scene corroborated his account. *Id*. The court denied the motion. *Id*.

¶ 16    Jordan Michalak testified for the defense that he saw who fired the shots on July 10, 2011, but neither defendant nor anybody else in the courthouse at trial was the shooter. *Id*. ¶ 17. On cross-examination, Michalak testified that he was with Juarez and Reed and a few other people on the night in question, when an argument arose with two other men. *Id*. Reed or Juarez threw rocks at the two men, one of whom produced a gun and fired 10 to 15 shots at Michalak's group. *Id*. The group ran but were quickly detained by police, while the shooter and his companion fled. *Id*. Michalak was taken to the police station and interviewed by Detective Schmalz where he described the events as he did at trial. *Id*. He could not describe the shooter beyond being a Hispanic male and did not tell Detective Schmalz that he could identify the shooter or offer to view a photographic array. *Id*.

¶ 17    Detective Schmalz testified in rebuttal that when Michalak was interviewed, he admitted that both he and Juarez threw rocks, and that the shooter was a Hispanic male Michalak knew

from the neighborhood as an acquaintance's brother. *Id.* ¶ 18. Michalak identified defendant "[n]ot by name but by association." *Id.*

¶ 18    The State waived closing argument while reserving rebuttal, and defense counsel waived closing argument. *Id.* ¶ 19. The trial court found defendant guilty on all counts. *Id.* ¶ 20. The court found that Reed had "selective memory," so his "testimony is absolutely of no importance." *Id.* While Juarez also had "selective memory," he was "thoroughly impeached." *Id.* He professed not to recall even appearing for the grand jury, much less any of his answers there, and he professed to have no recollection of his written statement although he admitted it bore his signature. *Id.* Noting that Michalak never came forward earlier "to say you've got the wrong guy in custody," the court found his testimony incredible. *Id.* Defendant was sentenced to 26 years in prison. *Id.* ¶ 21.

¶ 19    On direct appeal, defendant argued that there was insufficient evidence to convict him beyond a reasonable doubt, and that trial counsel was ineffective for not making a closing argument. *Id.* ¶¶ 22, 26. This court rejected both arguments and affirmed the judgment on appeal. *Id.* ¶ 28.

¶ 20    On August 5, 2016, defendant, with the assistance of retained counsel, filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122 *et seq.* (West 2016)), alleging that his trial counsel had been ineffective for failing to argue that defendant acted in self-defense on the night in question. Defendant stated in the petition that "the evidence adduced at trial demonstrates that evidence of self-defense was clearly and overwhelmingly shown by the facts then presented; nonetheless his counsel did not raise that defense." Defendant pointed to trial testimony indicating that a group of individuals had been throwing rocks at defendant prior to the shooting. Defendant further argued in his petition that Juarez had since been charged with

murder in 2016, which should be considered newly discovered evidence that would "corroborate his justifiable threat of force to defend himself, and to corroborate the reasonableness of his belief that Juarez and his accompanying rock-throwers were dangerous."

¶ 21    Attached to the petition was a verification affidavit from defendant stating that the allegations in the petition were true and accurate, and a copy of Juarez's inmate report from Cook County Department of Corrections. Also attached was postconviction counsel's Rule 651(c) certificate, which stated that counsel had spoken to defendant regarding his conviction and sentence, and that he had made any necessary amendments to defendant's petition. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The certificate acknowledged, however, that counsel had not yet received the entire trial court record. After receiving the trial record, counsel filed a supplemental postconviction petition that did not raise any new arguments, but did cite to and include portions of the trial record in support of defendant's claims of ineffective assistance of trial counsel for failing to raise self-defense.

¶ 22    The State filed a motion to dismiss both the original and supplemental petitions. The State argued that the petitions were procedurally defective because there was no affidavit from defendant that contained factual allegations supporting his claim of ineffective assistance of counsel, defendant failed to make a substantial showing that trial counsel was ineffective, and defendant failed to present any new, admissible evidence that would have changed the result of the trial.

¶ 23    A hearing was held on April 14, 2017. At that hearing, the parties argued the merits of the petition – namely, whether it was ineffective assistance of trial counsel to fail to raise self-defense. The State argued that to claim self-defense, a defendant would have to admit that he was

the shooter, whereas for reasonable doubt, the defendant is relying on the State's failure to prove

he was the shooter. The trial court stated in part:

> "[W]hat we're talking about here is whether or not trial counsel would have – by
>
> way of questioning those witnesses – acquiesce[d] that it was [defendant] that was
>
> the shooter ***."
>
> So when we talk about admitting that he's the shooter, it's not a matter of
>
> putting the defendant on and having him say: Yeah, I did it, but I did in self-
>
> defense. It's – I'm assuming that you're arguing it's the way the witnesses were
>
> questioned."

¶ 24    The State then argued that defendant "at this time, would prefer that his counsel had gone

with self-defense. That was not the theory of the case that was presented, and he hasn't shown

that it was objectively unreasonable to proceed in [the way that trial counsel did], and we'd ask

that you dismiss the petition." The court responded, "All right. I'm going to grant your motion to

dismiss."

¶ 25    Postconviction counsel then filed a motion to reconsider the dismissal of defendant's

petition, arguing that defendant's initial petition was sufficient, and that trial counsel should have

argued self-defense in addition to reasonable doubt. Attached to the motion to reconsider was an

affidavit from postconviction counsel stating trial counsel should have argued self-defense.

There was also an affidavit from defendant's trial counsel stating that he was an experienced,

licensed attorney since 1955, and that he "dispute[d] the reasons given by [postconviction

counsel], as I believed that defense [of self-defense] was unnecessary in view of the defense I

presented." Finally, there was an affidavit signed by defendant's mother.

¶ 26    At the hearing on the motion to reconsider the trial court stated:

"The real question is whether or not I have to grant a hearing to determine whether or not – even though there's an affidavit here from [trial counsel] that indicates that he felt that the defense that he presented, a defense of the State's inability to prove the defendant guilty beyond a reasonable doubt, was the valid defense, was a defense that he chose by strategy, that he did so in conversation with the defendant, whether or not it requires a hearing for him to actually say what his affidavit says.

And that's pretty much what this issue comes down to."

¶ 27 After hearing argument from the parties, the circuit court denied petitioner's motion to reconsider. This appeal follows.

¶ 28                                    II. ANALYSIS

¶ 29 On appeal, defendant contends that he was denied reasonable assistance of postconviction counsel for two reasons: 1) postconviction counsel failed to allege that appellate counsel was ineffective for failing to allege that trial counsel should have argued self-defense, and 2) the postconviction petition did not contain a valid section 122-2 affidavit from defendant. The State responds that postconviction counsel provided reasonable assistance of counsel where the circuit court dismissed the petition on its merits, and where postconviction counsel was not required to include an affidavit from defendant. We agree with the State.

¶ 30 A petition filed pursuant to the Act is a collateral attack upon a prior conviction and sentence, not a substitute or an addendum to a direct appeal. *People v. Simpson*, 204 Ill. 2d 536, 551 (2001). "The purpose of the post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction that had not already been adjudicated or could have been." *People v. Blair*, 215 Ill. 2d 427, 447 (2005). *Res judicata* bars claims that were

9

raised and decided and principles of waiver and forfeiture preclude claims that could have been raised on direct appeal, but were not. *Id*. at 443-47. However, the doctrines of *res judicata* and forfeiture are relaxed where: 1) fundamental fairness so requires; 2) the forfeiture stems from the ineffective assistance of appellate counsel; or 3) the facts relating to the issue do not appear on the face of the original appellate record. *People v. English*, 2013 IL 112890, ¶ 22.

¶ 31     In a noncapital case, a postconviction proceeding typically contains three distinct stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the circuit court must independently review a petition within 90 days and dismiss it if the petition is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the petition is not summarily dismissed, it is advanced to the second stage, where counsel is appointed and the State may respond. *Edwards*, 197 Ill. 2d at 245-46. If the defendant makes a substantial showing of a constitutional violation at the second stage, the petition is advanced to the third stage for an evidentiary hearing. *People v. Gaultney*, 174 Ill. 2d 410, 418-19 (1996). In this case, the circuit court made no finding regarding the first stage of review, but the State filed a motion to dismiss the petition. When the State files a motion to dismiss a postconviction petition, the trial court must decide whether to grant it or advance the petition to a third-stage proceedings at an evidentiary hearing. *People v. Dupree*, 2018 IL 122307, ¶ 28. A postconviction petitioner is entitled to an evidentiary hearing only when the allegations in the petition supported by affidavits, records, or other evidence make a substantial showing of a deprivation of rights under either the United States or Illinois Constitutions or both. *Id*. We review the trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 32    As our supreme court has noted, "it is settled that there is no constitutional right to assistance of counsel during postconviction proceedings." *People v. Cotto*, 2016 IL 119006, ¶ 29. "The right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the *** Act." *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Our supreme court has concluded that the Act provides a postconviction petitioner with "reasonable" assistance. *Id*. The reasonable level of assistance provided for by the Act is "less than that afforded by the federal or state constitutions." *Pendleton*, 223 Ill. 2d at 472.

¶ 33    Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), "imposes specific duties on postconviction counsel to ensure that counsel provides that reasonable level of assistance." *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 18. "The rule requires that postconviction counsel consult with the defendant to ascertain his contentions of the deprivation of constitutional rights, examine the record of the proceedings at trial, and make any amendments to the defendant's *pro se* petition that are necessary for an adequate presentation of his contentions." *Id*.

¶ 34    "Compliance with Rule 651(c) may be shown by the filing of a certificate representing that counsel has fulfilled her duties." *Id*. ¶ 19. "The filing of the certificate gives rise to the presumption that the defendant received the required representation during second-stage proceedings [citations]; however, this presumption may be rebutted by the record [citation]." *Id*. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 35    Here, defendant's retained postconviction counsel drafted a petition with several detailed claims of ineffective assistance of trial counsel, including that "the evidence adduced at trial

demonstrates that evidence of self-defense was clearly and overwhelming shown by the facts then presented; nonetheless his counsel did not raise that defense." Postconviction counsel also pointed to the "newly discovered evidence unavailable at the time of trial," of Juarez's arrest in January 2016 for murder to corroborate his claim of justifiable self-defense

¶ 36    Defendant contends, however, that postconviction counsel was unreasonable for failing to allege ineffective assistance of appellate counsel based on appellate counsel's failure to allege ineffective assistance of trial counsel for not raising self-defense. Defendant maintains that postconviction counsel should have alleged appellate counsel's ineffectiveness in the postconviction petition because without such allegation, defendant's claim regarding his trial counsel's failure to raise self-defense was subject to forfeiture for failure to raise it on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22 (the doctrines of *res judicata* and forfeiture are relaxed where: 1) fundamental fairness so requires; 2) the forfeiture stems from the ineffective assistance of appellate counsel; or 3) the facts relating to the issue do not appear on the face of the original appellate record).

¶ 37    Defendant relies on *People v. Schlosser*, 2012 IL App (1st) 092523, in support of his position. In *Schlosser*, the defendant filed a *pro se* postconviction petition in which he alleged that he had not been proven guilty beyond a reasonable doubt and that his sentence was unfair. *Id*. ¶ 2. The circuit court advanced the petition to the second stage and appointed counsel. *Id*. Appointed counsel did not amend the petition to include a claim of ineffective assistance of appellate counsel. *Id*. Finding that the defendant's claims were forfeited for failing to raise them on direct appeal, the circuit court dismissed the petition. *Id*. The appellate court held that postconviction counsel's failure to allege ineffective assistance of appellate counsel, which

would have "overcome the procedural bar of waiver," constituted unreasonable assistance of postconviction counsel. *Id*. ¶ 26.

¶ 38    Defendant argues, based on *Schlosser*, that "the necessity of alleging ineffectiveness of appellate counsel should have been obvious to postconviction counsel," and that postconviction counsel acknowledged that the claim of self-defense was of-record, and "therefore subject to forfeiture absent an allegation of ineffectiveness of appellate counsel."

¶ 39    We note that we cannot find any indication from the record that the trial court found defendant's claim of trial counsel's ineffectiveness to be forfeited for a failure to be argued on direct appeal. Rather, the trial court discussed the merits of defendant's ineffective assistance of trial counsel claim, and ultimately rejected it. The parties argued at length regarding whether it was ineffective assistance of appellate counsel to fail to raise ineffective assistance of trial counsel. The trial court stated in part:

> "[W]hat we're talking about here is whether or not trial counsel would have – by
> way of questioning those witnesses – acquiesce[d] that it was [defendant] that was
> the shooter ***."
>
>     So when we talk about admitting that he's the shooter, it's not a matter of
> putting the defendant on and having him say: Yeah, I did it, but I did in self-
> defense. It's – I'm assuming that you're arguing it's the way the witnesses were
> questioned."

¶ 40    The State then argued that defendant "at this time, would prefer that his counsel had gone with self-defense. That was not the theory of the case that was presented, and he hasn't shown that it was objectively unreasonable to proceed in [the way that trial counsel did], and we'd ask

that you dismiss the petition." The court stated, "All right. I'm going to grant your motion to dismiss."

¶ 41    At the hearing on the motion to reconsider the trial court stated:

"The real question is whether or not I have to grant a hearing to determine

whether or not – even though there's an affidavit here from [trial counsel] that

indicates that he felt that the defense that he presented, a defense of the State's

inability to prove the defendant guilty beyond a reasonable doubt, was the valid

defense, was a defense that he chose by strategy, that he did so in conversation

with the defendant, whether or not it requires a hearing for him to actually say

what his affidavit says.

And that's pretty much what this issue comes down to."

¶ 42     It is clear that the trial court was addressing the merits of defendant's ineffective assistance of trial counsel claim, and therefore postconviction counsel successfully overcame forfeiture.

¶ 43    Even if the trial court had found that the issue of trial counsel's ineffectiveness was forfeited because of appellate counsel's failure to raise it on appeal, we nevertheless would find that postconviction counsel was not unreasonable for failing to allege appellate counsel's failure to raise the issue on appeal where the underlying issue was meritless.

¶ 44    Claims of ineffective assistance of appellate counsel are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Coleman*, 168 Ill. 2d 509, 523 (1995). Under *Strickland*, the defendant must prove 1) that his counsel made errors so serious and his performance was so deficient, that he was not functioning as the "counsel" guaranteed the defendant by the sixth amendment to the Unites States Constitution, and 2) that these

deficiencies so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable. *Id.*

¶ 45    To demonstrate deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). Prejudice is demonstrated if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* Because a defendant's failure to satisfy either part of the *Strickland* test will defeat a claim of ineffective assistance, a court is not required to address both components if the defendant makes an insufficient showing on one. *Strickland*, 466. U.S. at 668. We note that appellate counsel "has no obligation to raise every conceivable argument which might be made, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently erroneous." *People v. Collins*, 153 Ill. 2d 130, 140 (1992). "[U]nless the underlying issues are meritorious, defendant obviously suffered no prejudice due to appellate counsel's failure to raise them on direct appeal." *Coleman*, 168 Ill. 2d at 523.

¶ 46    The defense theory to be presented to the trier of fact is not one of the matters that a defendant has the ultimate right to decide. *People v. Ramey*, 152 Ill. 2d 41, 53 (1992). "Rather, it is a matter of trial tactics or strategy which is ultimately left for trial counsel." *Id.*; see also *People v. Gallardo*, 112 Ill. App. 3d 764, 770 (1983) (holding that decision to rely upon one theory of defense to the exclusion of all others is generally a matter of trial tactics or strategy). Our supreme court noted that it will generally not review a claim of ineffectiveness of counsel based on an inadequate trial strategy. *People v. Guest*, 166 Ill. 2d 381, 394 (1995). Our supreme court, however, has recognized an exception where counsel entirely fails to conduct any meaningful adversarial testing. *Id.*

¶ 47     In this case, trial counsel presented a theory of innocence that required the State to prove its case beyond a reasonable doubt. At the close of the State's evidence, trial counsel asked for a directed finding, stating that the State's witnesses all failed to make in-court identification of defendant as the shooter, and that there were no incriminating statements by defendant or any other evidence connecting defendant to the crime. When the motion was denied, defense counsel called another alleged victim, Michalak, as a witness for defendant, who testified that he saw the person who fired the shots and that person was not defendant. Although counsel's motions and defense theory were unsuccessful, counsel subjected the State's case to meaningful adversarial testing, and thus there was no ineffective assistance of trial counsel.

¶ 48     Accordingly, because the underlying claim of ineffective assistance of trial counsel is meritless, it follows that defendant was not prejudiced by appellate counsel's failure to argue trial counsel's ineffectiveness. See *Coleman*, 168 Ill. 2d at 523. It also follows that defendant did not receive unreasonable assistance of counsel by postconviction counsel's failure to argue ineffective assistance of appellate counsel based on the same meritless underlying issue.

¶ 49     Defendant's second basis for his unreasonable assistance of postconviction counsel claim is that counsel failed to properly attach an affidavit by defendant to the postconviction petition pursuant to section 122-2 of the Act. 725 ILCS 5/122-2 (West 2016). Section 122-2 states:

> "The petition shall identify the proceeding in which the petitioner was convicted, give the date of the rendition of the final judgment complained of, and clearly set forth the respects in which petitioner's constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id*.

¶ 50 Our supreme court has noted that the section 122-2 requirements are meant to show "that the verified allegations are capable of objective or independent corroboration." *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002).

¶ 51 Defendant contends, without any citation to authority, that "[c]ontrary to postconviction counsel's belief, when self-defense is at issue, an affidavit from someone other than defendant is insufficient to satisfy the requirements of [section 122-2]." However, defendant's claim in his postconviction petition was a claim of ineffective assistance of counsel based on a failure to raise self-defense. Defendant contended that the "evidence showing self-defense was uncontradicted," and that "the evidence in the record is sufficient to raise the issue." Defendant further stated in the petition that "the evidence adduced at trial demonstrates that evidence of self-defense was clearly and overwhelming shown by the facts then presented; nonetheless his counsel did not raise that defense." Defendant supported his claim of ineffective assistance of trial counsel with excerpts of the trial record that included certain witness testimony stating that they threw rocks at defendant on the day in question, as well as the appellate court order.

¶ 52 His petition also alleged that the newly discovered evidence of Juarez's murder charge would "corroborate his justifiable threat of force to defend himself, and *** corroborate the reasonableness of his belief that Juarez and his accompanying rock-throwers were dangerous." He attached a copy of Juarez's inmate report from Cook County Department of Corrections in support of that claim. Additionally, in his motion to reconsider, defendant attached affidavits of his postconviction counsel, his trial counsel, and his mother. We find that these attachments meet the requirements under section 122-2 of the Act as "affidavits, records, or other evidence," and showed that the allegations in defendant's postconviction petition were capable of objective or independent corroboration. 725 ILCS 5/122-2 (West 2016). An additional affidavit by defendant,

beyond his verification affidavit stating that the allegations in the petition were true and accurate, would not have been necessary to independently corroborate the allegations in the petition. See *People v. Teran*, 375 Ill. App. 3d 1, 4 (2007) ("because no affidavit of defendant's would have provided objective or independent corroboration per section 122-2, defendant's affidavit was not necessary for that purpose either.")

¶ 53    Accordingly, after careful review of the record, we find that defendant has failed to overcome the presumption that postconviction counsel provided reasonable assistance of counsel for failing to attach an evidentiary affidavit by defendant. See *Profit*, 2012 IL App (1st) 101307, ¶ 19 (it is defendant's burden to overcome the presumption that defendant received reasonable assistance of counsel by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)). Moreover, there is simply nothing in the record indicating that the trial court dismissed defendant's postconviction petition based on an absence of supporting affidavits. Rather, the trial court addressed the merits of defendant's petition before dismissing it.

¶ 54                                III. CONCLUSION

¶ 55    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 56    Affirmed.